# $\mathfrak{Charleston}.$

## CAPEHART'S EX'R v. DOWERY et al.

(Absent, MOORE, JUDGE.)

Decided April 28, 1877.

1877.
January Term. 1. An affidavit made under section one of chapter one hundred and six of the Code of West Va., after reciting the amount and justice of the debt and that the debtor had left the State of West Virginia with intent to defraud his creditors, and has assigned and disposed of a part of his property with that intent, as affiant believes, proceeds as follows: "Affiant states the following facts relied on by him to show the existence of the grounds upon which his application for an attachment is based: Affiant is informed and believes that said Joseph S. Dowery is now in the State of Kansas, employed in some business connected with a railroad, and that just before leaving the State of West Virginia, he assigned and disposed of the obligation given him for the purchase money of the steamboat "Energy" at a large discount, and carried the proceeds away without leaving adequate means to satisfy the said claim of the affiant, or any means known to affiant to satisfy a large amount of indebtedness due to other parties, and mortgaged nearly all of his real estate before leaving the State." HELD:

That the foregoing affidavit is too vague and indefinite in its statements, and does not furnish reasonable evidence of a fraudulent intent on the part of the debtor, and is therefore insufficient.

2. It is competent for any party interested, and filing his petition disputing the validity of the plaintiff's attachment, as provided for under section twenty-four of chapter one hundred and six, to move the court to quash the affidavit and attachment; or if such interested party desire to controvert the truth of the

facts, or any of them stated in the affidavit, material to the issuing of the attachment, he may have an issue made up for that purpose, and tried by a jury under the nineteenth section of said chapter one hundred and six.

3. Where a defendant in a suit, in which an attachment has issued, has been served with process, although he has not been served with a copy of the order of attachment, he need not be proceeded against by order of publication, and has no time given him by chapter one hundred and six of the Code, in which to appear in the suit, after the term at which judgment is rendered against him on the claim, and an order made to sell the attached effects or estate; and in such a case no bond is required to be given, as provided for in section twenty-three of chapter one hundred and six of the Code.

4. Where a sale of property is made under an order of sale in an attachment suit, in a case where the parties interested in the property are before the court and the sale is confirmed, and the order of sale, the sale itself, and the order confirming the sale are free from fraud, under section eight of chapter one hundred and thirty-two of the Code, the title of the purchaser at such sale is not affected by the reversal or setting aside of the order under which the sale is made.

5. But, if the report of the sale and order of confirmation is excepted to, and the record discloses, in support of such exceptions, sufficient reasons to show that the sale itself was improper and ought not to have been made, the decree or order of confirmation will be reversed and the sale set aside.

6. The rule *caveat emptor* applies to a purchaser at a judicial sale, and though after confirmation of the sale he finds that the title he will procure from the court will be worthless, yet he cannot be relieved from the payment of the purchase money.

7. In order that property sold at judicial sales should bring a fair price, it is necessary that the title of purchasers at such sales should be protected.

An appeal from an order of the circuit court of Mason county, made on the 7th day of March, 1872, in an action of debt, with attachment, brought by James Capehart's ex'r against Joseph S. Dowery, and in which the appellants had filed their petitions, claiming respectively different portions of the property attached.

The undertaking for the appeal was given in February, 1872, by the petitioners, James Lenihan, E. A. Young and others.

1877.
January Term.

Capehart's ex'r
v.
Dowery *et al.*

Johnson, Judge, who delivered the opinion of the Court, gives a statement of the case.

*W. H. Tomlinson and G. P. Simpson,* for plaintiff in error, referred to the following authorities:

Bump on Fraud. Con., 62 ; Code W. Va., ch. 106, §20 ; *J. & H. Brien v. Pittman & Co.,* 12 Leigh, 379 ; Code W. Va., ch. 106, § 24 ; *McCluny & Co. v. Jackson,* 6 Gratt., 105 ; *Ludington et al. v. Hull,* 4 W. Va., 130 ; opinion of Baldwin, J., in *Withers v. Carter,* 4 Gratt., 410 ; opinion of Moncure, J., in *Schofield v. Cox et al.,* 8 Gratt., 533 ; 2 Rob. Pr., 207 ; Drake on Atta., § 234; Statutes of Illinois, vol. 2, p. 969 ; *Cox v. Miller,* 23 Ill., 476 ; 34 Pa. St., 299 ; 9 Cow. (N. Y.), 123 ; *Sallwell v. McDowell,* 39 Mo., 282 ; *Evans v. McGlasson,* 18 Iowa, 150 ; *Savery v. Browning,* 18 Iowa, 246 ; 1 R. C., 1819, 362, § 4; Code W. Va., ch. 74, § 4 ; *Barrett v. Barrett,* 31 Tex., 344 ; 27 Tex., 593 ; 38 Ill., 418 ; 24 Ind., 165 ; 36 Ill., 523 ; 2 Tuck. Com., 3d ed., 450 ; 1 Lomax Digest, 394 ; 4 Cranch, 269 ; 10 Iowa, 493 ; 3 Scam. (Ill.), 104 ; 7 Am. R., 149; 10 Wend., 420 ; 21 Wend., 672 ; 4 Hill, 598 ; 7 Hill, 187 ; 6 Minn., 14 ; 14 Wend., 237.

*John W. English,* for defendant in error, cited the following authorities:

*Pulliam v. Aler,* 15 Gratt., 54 ; *Mantz v. Hendley,* 2 H. & M., 308 ; *Jones & Ford v. Anderson,* 7 Leigh, 309-313 ; 31 Ill., 306.

*Smith & Knight,* for defendant in error, referred to the following authorities:

Code W. Va., ch. 106, § 24 ; Code W. Va., ch. 74, § 5 ; *Withers v. Carter,* 4 Gratt., 407 ; 1 R. C., 362, § 1 ; Code Va., 1849, 508, §5 ; *Guerrant v. Anderson et al.,* 4 Rand., 208 ; *McClure v. Thistle's ex'rs,* 2 Gratt., 182 ; Code W. Va., ch. 106, § 19 ; Code W. Va., ch. 133, §8 ; *Underwood v. McVeigh,* 23 Gratt., 409.

## STATEMENT OF THE CASE BY THE JUDGE.

1877.
January Term.

Capehart's ex'r
v.
Dowery *et al.*

The plaintiff instituted an action of debt in the circuit court of Mason county against the defendant, Joseph S. Dowery, in 1869, and having made an affidavit under the first section of chapter one hundred and six of the Code of West Virginia, an order of attachment was made in said cause by the clerk of the court, directing the sheriff of said county to attach the real and personal estate of the defendant in sufficient amount to satisfy the plaintiff's debt. The summons was served by delivering a copy of the same to the wife of defendant at his usual place of abode, and explaining the purport thereof. The defendant not appearing, judgment was entered in February, 1870, for the amount of plaintiff's claim, and directing a sale of the attached property for the payment thereof.

Before said sale was confirmed, or any order made for payment of the proceeds, several parties appear in court and ask leave to file their petition, which was granted, setting forth, respectively, various claims and demands to different portions of the attached real estate, some by virtue of deeds or executory contracts for the purchase of the same, and others by virtue of judgment liens, of which they sought the benefit. These petitioning claimants, having exhibited evidence of their respective claims, and given security according to law, moved the court, first to quash the affidavit and attachment, which motion the court overruled, and petitioners excepted. Failing in that motion, they asked leave of the court to controvert before a jury, or before the court, the truth of the facts alleged in the affidavit of the plaintiff, upon which the attachment was founded, upon the ground that said attachment was sued out upon false suggestions; this motion being refused by the court, said petitioners excepted. And the matters of law arising upon the attachment and the several petitions and each of them aforesaid, and upon the several claims set up in said petitions being submit-

ted to the court, and the court being of opinion that the plaintiff's executor, &c., has a better right to each and all of the property levied upon by virtue of his attachment than any or either of said petitioners, it was ordered, on the 7th day of March, 1872, that each of said petitions be dismissed, and that the plaintiff recover his costs, &c. that the sales of the attached property be confirmed, and the proceeds of sale be paid to the plaintiff. From this judgment the petitioners, having filed their undertaking, have appealed to this Court.

JOHNSON, JUDGE:

This case was submitted while the lamented Judge Paull was on the bench, and in consequence of his death and the resignation of Judge Hoffman, it was reargued at the present term of the Court.

Judge Paull prepared an opinion on one branch of the case, which, in justice to his memory, as I fully concur therein, I adopt as my own.

"The first question for determination is this: Was it error on the part of the circuit court to overrule the motion to quash the affidavit and attachment? Before considering this question directly, we will notice the right of the petitioning claimants, to take the course or make the motions they did in regard to the affidavit and attachment. The nineteenth section of chapter one hundred and six of the Code provides as follows: 'The right to sue out an attachment may be contested, and when the court is of opinion that the facts stated in the affidavit were not sufficient to authorize the issuing thereof, or that the affidavit is otherwise insufficient, judgment shall be entered that the attachment be quashed,' and then provides how the defendant may contest the truth of the facts, &c., after having made the preceding general provision.

"Section twenty-four provides that 'any person interested may file his petition at any time before the property attached as the estate of the defendant is sold under the decree or judgment, or if the proceeds of the sale have

not been paid over to the plaintiff, or his assigns, within 1877.
January Term.
Capehart's ex'r
v.
Dowery et al. one year after such sale, disputing the validity of the plaintiff's attachment thereon, or stating a claim thereto, &c.' As I understand the effect of this part of the twenty-fourth section, it is to give a party interested the benefit of the general provisions heretofore cited from the nineteenth section of said chapter, in other words such interested party is authorized to contest the right of the plaintiff to sue out the attachment by controverting the sufficiency of the facts stated in the affidavit to authorize the issuing thereof, or that the affidavit is otherwise insufficient. If the defects touching the validity of the attachment are apparent upon the face of the papers, he may reach his object by a motion to quash; or, if he desires to controvert the truth of the facts set forth in the affidavit, the court will direct an issue to be made up, and tried by a jury, as provided in said nineteenth section. I hold this to be the true construction of the nineteenth and twenty-fourth sections of chapter one hundred and six; for, if otherwise, we do not see how any legitimate effect can be given to these provisions. The validity of an attachment depends upon the sufficiency of the affidavit upon which it is founded, or upon the truth of the facts therein stated. The right to dispute its validity involves the right to pursue the only course indicated in the statute for that purpose, as provided in the sections aforesaid. The petitioners must therefore be regarded as having the right to move the court for leave to controvert the truth of the facts set forth in the affidavit, or any of them, in the manner provided in said nineteenth section, and it was therefore error in the court to overrule their motion for this purpose. The court, as before stated, having overruled the motion to quash the attachment, we now proceed to consider the sufficiency of the affidavit.

"Attachment proceedings spring exclusively from the statute, and are in derogation of the common law. They are somewhat severe in their character, seizing and hold-

ing the property of the alleged debtor, for the payment or satisfaction of a claim or demand, yet to be established in the future, and for which a judgment may or may not ever be rendered. The only authority for this peculiar proceeding, and the only shield interposed for the protection of the debtor, is in the affidavit, which the law requires to be made before the attachment shall issue. A full and careful compliance with the requirements of the statute as to what this affidavit shall contain and express, and the knowledge or belief of the affiant, by which it shall be verified, is most just and reasonable. The affidavit in the present case, after stating the amount of the plaintiff's claim, &c., proceeds as follows: "Affiant further states that said Joseph S. Dowery, the defendant, has left the State of West Virginia, with intent to defraud his creditors, and has assigned and disposed of a part of his property with intent to defraud his creditors, as he believes. Affiant states the following facts relied on by him to show the existence of the grounds upon which his application is based : Affiant is informed and believes that said Joseph S. Dowery is now in the State of Kansas, employed in some business connected with a railroad; and just before leaving the State of West Virginia he assigned and disposed of the obligation given him for the purchase money of the steamboat "Energy" at a large discount, and carried the proceeds away, without leaving adequate means to satisfy the said claim of the affiant, or any means known to affiant to satisfy a large amount of indebtedness due to other parties, and mortgaged nearly all of his real estate before leaving the State."

"It will be observed that this affidavit is founded upon the sixth clause of section one of chapter one hundred and six of the Code. This provides for the case of a party who has " assigned or disposed of his property or a part thereof, or is about to do so, with intent to defraud his creditors." In said first section it is also provided that the affiant shall state in his affidavit the ma-

terial facts relied on by him, to show the existence of the grounds upon which his application for the attach-ment is based.  The manifest object of this provision is to guard the property of the debtor against improper seizure, and to enable the court to judge and determine whether the information thus supplied by the affidavit of " material facts " relied upon by affiant, furnishes reasonable proof of the main fact involved, to-wit : the fraudulent intent of the debtor.  If evidence of this fact does not sufficiently appear from the " material facts " alleged in the affidavit, the same must be regarded as insufficient.  This was the view taken by the court in *ex parte* L. Robinson, 21 Wend., 672, where, as we see from the opinion of the court, that section four of the Revised Statutes of New York required the " grounds " upon which an application for an attachment is based, to be stated.  The court says " affirming that a party has left the State with intent to defraud his creditors, may be predicated upon matters of opinion or belief, rather than upon fact. The affirmant may honestly believe and thus affirm it in general terms ; whereas, if called to state the facts and circumstances upon which he reached the conclusion, the officer, " being thus enabled to exercise his judgment in the matter, might well differ from him." Also, *Smith v. Luce*, 14 Wend., 237.  From the vast variety of facts and circumstances occurring in the history of human affairs, it is difficult, perhaps utterly impracticable, to adopt any uniform rule which shall apply to all cases of this kind.  I have seen no such rule, but the question being one of evidence, its just weight and effect must be determined in each particular case as it arises.

"Let us look at the " material facts " as now stated in the affidavit.  The first fact is that " said Joseph S. Dowery is now in the State of Kansas, employed in some business connected with a railroad."  Whether he has been absent one week or one month, or more or less, we are not informed.  It is simply said that he is in Kansas and is there employed in some lawful business ; it may

1877.
January Term.
Capehart's ex'r
v.
Dowery et al.

be, for aught that is seen to the contrary, that he is engaged in a temporary job or enterprise, after which he will return, for it is not said that he designs to remain away. It is next said that before leaving the State he assigned and disposed of the obligation given him for the purchase money of the steamboat "Energy" at a large discount, and carried the proceeds away without leaving adequate means to satisfy the claim of the affiant or any means known to affiant to satisfy a large amount of indebtedness due to other parties. The affiant has not informed us, if he had the knowledge himself, what the *amount* of this obligation was, nor can we infer it ; it may have been for $5,000, or it may have been for $500, or for a still less sum ; the fact that it was given for the purchase money of a steamboat does not help it ; the value of the boat is not stated, and it may have been of comparative little value ; these facts should have appeared in the affidavit itself ; the Court cannot infer or supply them. For anything appearing to the contrary, the amount of money which the debtor took with him from this source, when leaving, may have been of very inconsiderable amount and of little consequence in proving a fraudulent intent. It is said further, however, that this obligation was disposed of at "a large discount." The amount is not stated. Now, the words large and small are comparative terms. What is large in the estimation of one person may be small in the view of another ; 10 per cent. may .be large in the view of one, while not less than twenty or thirty would be large in view of another. If this affidavit can be sustained on the ground here stated, it must be by the Court inferring or supplying facts which cannot be inferred, and are solely matters of proof, and the knowledge of them is supposed to lie in the breast of the affiant. Again it is stated that the debtor left no means known to affiant to satisfy a large amount of indebtedness to other parties. But no information is given of the circumstances, property, or fortune of this party, and no standard is

furnished to enable the Court to judge what is a large indebtedness, which is a matter purely relative; what would be a large indebtedness to one man, would be of no account whatever to another. And again, the Court cannot infer what that indebtedness was, nor what were the reputed circumstances of the debtor. This fact as thus stated in this isolated form, cannot be regarded as reasonable proof of a fraudulent intent.

"Lastly, it is said that the debtor mortgaged all his real estate before leaving the State. It is argued that the debtor borrowed money by virtue of this mortgage, and took the same away with him. This, however, is not the statement, and the just and legal presumption from the simple statement is that the party mortgaged the property to secure his debts. The law presumes that a man acts not from wrong but from right motives and purposes, and any inference to the contrary here is unwarranted. If the fact was different it should have been so stated. Upon the whole we do not see, in what are alleged in the affidavit as material facts, sufficient evidence of fraudulent intent on the part of the debtor, without making sweeping inferences of facts which do not appear. The affidavit is too vague, indefinite and meager in the information which it supplies. For these reasons we think the court erred in not quashing the affidavit and attachment."

The sale under the order of the court was made on the 30th day of July, 1870. On the 20th day of February, 1871, the defendant, Joseph S. Dowery, by counsel, moved to docket a motion to reverse and set aside the order of sale of the defendant's real estate, rendered on the 25th day of February, for the following, among other reasons: "That the record shows that the defendant, whose real estate was attached in the action, had not appeared in the action or been served with copy of the attachment sixty days before such judgment and order of sale of the real estate so attached, and that the plaintiff or some one for him had not given bond with suffi-

cient security, in such penalty as the court shall approve, with condition that the plaintiff will perform such future order as may be made by the court in the action." The motion was docketed, and upon a hearing thereof on the 30th day of May, 1871, the court refused to set aside the order and dismissed the motion. The plaintiffs in error insist this was error, and claim that under section twenty-three of chapter one hundred and six of the Code, that no sale could take place until such bond was given. Section twenty-three provides as follows: "But if the defendant whose real estate is attached has not appeared in the action or suit, or been served with a copy of the attachment sixty days before such judgment, decree or order, no sale of the real estate so attached shall be made until the plaintiff or some one for him shall give bond, with sufficient security, in such penalty as the court shall approve, with condition that the plaintiff will perform such future order as may be made by the court in the action or suit, in case the defendant appear and make defence therein within the time prescribed by law; provided, that after the right of a defendant to appear and make defence, in any such action or suit, shall have expired by limitation or otherwise, as prescribed in this chapter, a sale of such real estate may be made under the judgment, order or decree, whether such bond has been given or not." Section seventeen is as follows:

" When any attachment, except under the third section, is returned executed, an order of publication, as prescribed in chapter one hundred and twenty-four, shall be made against the defendant against whom the claim is, unless he has been served with a copy of the attachment, or with process in the suit in which the attachment issued."

Therefore, if he had not been served with a copy of the attachment or with process in the suit in which the attachment issued, he would have to be proceeded against by order of publication, and would be entitled to the time of such person so proceeded against under an order

of publication, as is prescribed in said chapter one hundred and six. But if he has been served *either* with process in the suit or with a copy of the attachment, he cannot be properly proceeded against under an order of publication, and has no further time to appear than a defendant in any other case. There is no provision made in chapter one hundred and six for the appearance in the cause, after judgment on the claim and the attachment, unless *neither* process nor a copy of the attachment was served upon the defendant. The defendant in this case was served with process in the suit in which the attachment issued, and had no time after the term at which the judgment was had against him on the claim, and the attachment, in which to appear in the case and make defence, and therefore the sale was properly made without the bond being given, and there was no error in the court in dismissing his motion. The defendant, Joseph S. Dowery, did not join in the undertaking for an appeal in this cause; the plaintiffs in error here are James Lenihan, E. A. Young, Peter Roush, Peter and George Roush and Henry C. Turner, who filed their petitions in the court below, claiming to own certain lots which they had, previous to the levy of the attachment, purchased of the defendant, Joseph S. Dowery, and whose title bonds to said lots respectively had not been placed on record until after the attachment had been levied upon said lots; and one of the errors of which they complain is, "that the court erred in deciding that the plaintiff, by virtue of his attachment lien, had a better right to the property levied on than the petitioners or either of them." We have already decided that by virtue of the said attachment the plaintiff acquired no right to any of the property levied upon thereunder. But a much more serious question arises, and one not discussed by counsel on either side, and that is, what rights have the purchasers to said lots under the sale made by virtue of the order of the court? The record discloses the singular fact that in the very order of the court overruling

the motion of the said petitioners to quash the affidavit and attachment, and to dispute the validity of said attachment, &c., the petitioners, being present, permitted the court to confirm the sale made by the sheriff of the lots they claimed, and to appoint a commissioner to make the proper conveyances of the same to the purchasers respectively, *and yet made no exception to the report and did not object to its confirmation.*

If exceptions had been made to said report, and the confirmation thereof, and had shown sufficient reason to this Court why the same ought not to have been confirmed, and if it had been wrongfully confirmed this Court would reverse the order of confirmation and set aside the sale of the property. But as is expressly provided in section eight of chapter one hundred and thirty-two of the Code: " If a sale of property be made under a decree or order of a court, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled."

By the express provision of this statute the title acquired by a purchaser at a judicial sale shall not be affected by the reversal or setting aside of the decree or order under which the sale was made, but if there were reasons why the sale should not be confirmed, and exceptions made to the report of sale and the confirmation thereof, and these reasons show that the sale was improper and should not be confirmed, then the title of the purchasers would be affected by these facts; but if the sale is confirmed without exception to the report, or objection to its confirmation, then such title as the purchaser acquired at the sale, is not affected by the reversal or setting aside of the order or decree under which the sale was made. *Sinnett et al. v. Cralle's adm'r et al.,* 4 W. Va., 603. Of course it must be understood that such sale is in a case where the parties interested in the property are before the court, and the decree of sale,

the sale itself and the confirmation of the sale, are free from fraud. Fraud vitiates everything. Lord Coke says it avoids all judicial acts, ecclesiastical and temporal. In *Underwood v. McVeigh*, 23 Gratt., 423, Judge Christian says: " The proposition that a sheriff's deed for property sold under a valid judgment of a court of competent jurisdiction, proves the legal title is, as a matter of course, subject to the qualification that all the proceedings are regular and *bona fide*, and free from the taint of fraud. If fraud be shown either in the proceedings or sale, or in the judgment confirming the sale, the whole proceedings are vitiated. The proceedings of a court of justice establishing rights or fixing liabilities, must always be founded upon the fact that they are carried out *bona fide* and without the taint of fraud. If fraud be shewn, the very fountain is poisoned, and all the proceedings are null and void." But under our statute, if the proper parties interested in the property are before the court, and there be no fraud in the decree or order of sale, in the sale, or in the decree or order of confirmation, and such sale be confirmed, the title of the purchaser at such sale shall not be affected by the reversal or setting aside of the decree or order under which such sale was made, but in such case restitution of the proceeds of such sale should be made to those entitled to receive such proceeds.

It has been held that the rule *caveat emptor* applies to a purchaser at a judicial sale, and although after confirmation of the sale he finds that the title he will receive will be worthless, yet he cannot be relieved from the payment of the purchase money. *Young's adm'r and Bowyer v. McClung et al.*, 9 Gratt., 336 ; *Cooper v. Hepburn et al.*, 15 Gratt., 551 ; *Shields et al. v. McClung et al.*, 6 W. Va., 79.

It would be hard indeed to hold a purchaser at a judicial sale to his purchase under such circumstances ; if he could not get the property he purchased in other cases where the transaction was fair and *bona fide*. To

make property bring anything like its fair value, confidence in the titles acquired at judicial sales should be protected.

For the foregoing reasons said order of the circuit court of Mason county, entered on the 7th day of March, 1872, so far as it overruled the motion of the petitioners to quash the affidavit and attachment, and so far as it denied the petitioners the right to contest the validity of the attachment is reversed, with costs to the petitioners, against James Capehart, executor of James Capehart, deceased, and so far as said order confirmed said sale of the lots therein mentioned and appointed a commissioner to make deeds to the purchasers thereof is affirmed ; and this Court, proceeding to render such judgment on the said motion to quash the affidavit and attachment in said case, as the circuit court of Mason county should have made, it is ordered that the said affidavit and attachment be quashed, and that the petitioners recover against said James Capehart, executor of James Capehart, deceased, their costs about the prosecution of their petitions expended, to be paid out of the assets of his intestate unadministered, and this cause is remanded to the said circuit court of Mason county, with instructions to said court to cause restitution of the proceeds of the sale of the real property mentioned in said petitions and sold under the said order of sale, to be made to those entitled to receive the same, according to the principles of law and equity.

Judges Haymond and Green concurred in this opinion.

DECREE REVERSED and cause remanded.