# WHEELING.

STEVENS FOR USE &C. *v.* BROWN.

Submitted June 8, 1882.—Decided November 11, 1882.

1. The defenses to proceedings by attachment, as well as the proceedings themselves, are statutory; and, consequently, the mode of defense, prescribed by the statute, must be strictly pursued, and no other plea in abatement to an attachment, than the one so prescribed, can be allowed. (p. 457.)

2. A case in which the jurisdiction of the court is sustained, upon a state of facts similar to those in *Mahany* v. *Kephart*, 15 W. Va. 609. (p. 458.)

3. In an action at law, where A sues for the use of B, A is the legal plaintiff, and a plea by the defendant, that the transfer or assignment of the debt sued on, by A to B was illegal and without consideration, is immaterial. (p. 458.)

4. It is a principle universally recognized, that laws have no *extraterritorial* force. Their authority is limited to the territorial jurisdiction of the State or country that enacts them, so far as their right or power of enforcement or claim to obedience is concerned. (p. 459.)

5. Whenever the *municipal* laws proper of one State are recognized and enforced in another, it is merely by *comity* of the latter ; and this comity is never extended to the laws of remedy, but has been generally regarded as extending to matters *ex contractu* or such torts as are in violation of natural rights.   (p. 460.)

6. Laws relating to contracts and their enforcement, affect either the contract itself or the remedy.   The law of the *forum* governs as regards the remedy in the enforcement of contracts, and the *lex loci contractus* as regards their interpretation and validity.   (p. 460.)

7. Exemption laws pertain to the remedy and depend upon the law of the *forum* and not upon the *lex loci* for their enforcement.   (p. 461.)

8. The citizens of our sister States have, by the Constitution of the United States, the same privileges with our own citizens, and any one of them who has availed himself of the legal remedies furnished by our laws, to secure the payment of a debt due him, has the same claim to the assistance of our courts that one of our own citizens would have.   (p. 461.)

9. The courts of this State will not enforce the statutory penalties of another State.   (p. 461.)

10. A citizen of the State of Ohio, having a valid debt against another citizen of that State, which can not be collected by legal process there by reason of the exemption laws of that State, and which laws make it a misdemeanor for such creditor to assign, transfer, or send out of the State, such debt for the purpose of having it collected by proceedings in attachment in courts outside of that State, with intent to deprive such resident debtor of personal earnings so exempt, when the person or corporation owing the money intended to be attached is within the jurisdiction of said State, has a right to bring an action and attach such earnings for such debt in the courts of this State, when the garnishee is a domestic corporation of this State, and the attachment is served on such garnishee in the county where the action is brought, notwithstanding such creditor may have sent the claim to this State and instituted his action here for the purpose of evading the exemption laws of the State of Ohio.   (p. 461.)

11. The courts of this State will not, through respect or comity to a sister State, recognize or enforce the exemption laws of such State.   (p. 461.)

12. Where the court and not a jury tries the case, and the evidence is certified, the Appellate Court will not reverse the judgment because the trial court heard improper evidence, unless all the evidence is certified, and it affirmatively appears that there is

not sufficient proper and competent evidence to sustain the judgment. (p. 463.)

Writ of error and *supersedeas* to a judgment of the municipal court of Wheeling, rendered on the 5th day of July, 1881, in an action at law in the said court then pending, wherein J. E. Stevens who sues for the use of G. O. Smith, was plaintiff, and F. H. Brown and Norris H. Brown were defendants, allowed upon the petition of said Norris H. Brown.

Hon. Gibson L. Cranmer, judge of the municipal court of Wheeling, rendered the judgment complained of.

The facts of the case are fully stated in the opinion of the Court.

*Robert White* and *R. G. Barr* for plaintiff in error, cited the following authorities :    Acts 1872–3 ch. 226 § 139 ; 10 W. Va. 130 ; 22 Gratt.; 28 Ala. 514 ; 32 Ala. 30 ; 27 Ala. 269 ; 2 Ind. 483 ; 7 Ind. 132 ; 31 Me. 247 ; 5 Har. & J. 183 ; 5 Mass. 286 ; 17 Mass. 268 ; 5 Mass. 395 ; 4 N. H. 285 ; 13 Allen 87 ; 4 Minn. 278 ; 7 Mo. 585 ; 5 N. H. 196 ; 29 N. H. 264 ; 30 N. H. 540 ; 4 S. & R. 159 ; 1 Binn. 118 ; 4 Dallas 298 ; 6 Binn. 321 ; 4 Hump. 199 ; 17 Ver. 105 ; 21 Ver. 9 ; 14 O. St. 331 ; 1 Otto. 406 ; Sto. Conf. of Laws, § 262 ; 24 Ia. 412 ; 13 Peters 65 ; 14 How. 586 ; 47 Md. 204 ; Sto. Conf. Laws § 582 (b) ; 2 W. Va. 83 ; 11 Wheat. 361, 371 ; 2 Bing. 202, 211 ; 3 H. & M. 59 ; Matth. Dig. 422 ; 14 Ves. 88 ; 5 Cranch. 358 ; *Augusta* v. *Earle*, 13 Pet.; 53 Md. 33 ; 13 W. Va. 609.

No appearance for defendant in error.

SNYDER, JUDGE, announced the opinion of the Court :

This is an appeal from a judgment of the municipal court of Wheeling, rendered on the 5th day of July, 1881, in an action of debt, brought by J. E. Stevens for the use of G. O. Smith against Norris H. Brown, on the 30th day of September, 1880.    The action is founded on the judgment of a justice, rendered August 4, 1880, in Newark township, in Licking county and State of Ohio, for one hundred and fifty dol-

lars and six cents and five dollars and sixty cents costs. Two attachments issued in the case—one September 30, 1880, and the other January 13, 1881—and were served in Ohio county on the Baltimore and Ohio Railroad Company as garnishee and creditor of the defendant. The said company appeared and answered each of said attachments and admitted an aggregate indebtedness to the defendant of one hundred and sixty-six dollars and seventy cents, for which the court also gave judgment against it in part satisfaction of the aforesaid judgment against the defendant Brown. The defendant Brown demurred to the plaintiff's declaration, also, tendered three pleas in abatement to said attachments and four pleas to the action, all of which pleas were in writing and sworn to by the defendant. The plaintiff joined in said demurrer and objected to the filing of said pleas; the court overruled the demurrer, rejected said pleas and refused to permit them or any of them to be filed. The defendant then pleaded *nul tiel record*, to which the plaintiff replied generally; and defendant also moved the court to quash the said attachments, which motion the court overruled; and therefore the court having seen and inspected the record of the alleged judgment in the declaration mentioned, and having fully heard the evidence, was of opinion that there was such record as is in the plaintiff's declaration mentioned, and gave judgment for one hundred and sixty-three dollars and ninety-one cents and costs against the defendant, Brown, and also on the attachments as before stated. The defendant, Brown, filed two bills of exceptions, which are made parts of the record. The first sets out the seven pleas in writing which the court rejected and shows, that the defendant excepted to the judgment of the court rejecting the said pleas; and the second contains certain depositions read by the plaintiff to prove the jurisdiction of the justice who rendered the judgment in the plaintiff's declaration mentioned, and tending to prove that said justice had such jurisdiction, that there had been personal service on the defendant, and that the proceedings of the said justice were authorized by the laws of the State of Ohio and were regular and in due form. It also shows that the defendant objected to the reading of said depositions on the trial, upon the ground that they were irrelevant and

improper testimony under the pleadings in the case, that the court overruled said objection and the defendant excepted.

The said written pleas of the defendant, set out in his first bill of exceptions, are quite elaborate and state the facts relied on as his defence in various forms and are evidently intended to present his defence, both to the attachments and the action, in all its phases, so as to avoid any technical objection and thus have the case disposed of on its merits. These pleas, having been rejected by the court, the allegations therein, so far as properly pleaded, must in this Court be taken as true. I do not deem it necessary to give said pleas separately, as the questions presented to this Court can be fully understood from a statement of the facts alleged therein which are in substance as follows:

That the defendant, Brown, was at the time this action was instituted, and had been for more than three years prior thereto, a resident and citizen of the county of Licking in the State of Ohio, and for all that time was an employee of the Baltimore and Ohio Railroad Company, a corporation doing business in said county under the laws of said State of Ohio; that for wages earned by, and payable to, said defendant, in said State, the said company was indebted to him in the sum of ———— dollars when this action was brought, and that he was then the head of a family, living with him in said State, during the time aforesaid which was and still is under his care and support; that said wages were necessary for the support of himself and his said family, and were then and still are by the laws of said State of Ohio exempt from levy or distress for the payment of the judgment in the plaintiff's declaration mentioned; that the plaintiff, J. E. Stevens, was at the time this action was brought and for more than three years prior thereto a citizen and resident of said State of Ohio, and at that time and for a long time previous thereto it was contrary to the laws of said State, and under said laws a misdemeanor, to send said judgment of the plaintiff out of said State for the purpose of subjecting said wages in any way to the payment of said judgment or any part thereof, or of depriving the defendant of the benefit of such exemption of all of which the said Stevens and the said Smith for whose use this action is brought had notice; that the said Stevens

for the purpose of evading said laws of the State of Ohio and subjecting the said wages of defendant contrary thereto towards the payment of his said judgment sent the same to the said Smith from said State of Ohio to the city of Wheeling in the county of Ohio and State of West Virginia, and the said Smith, with full notice of the premises, received said judgment from said Stevens and for the purpose of aiding him in his unlawful object caused this action to be instituted and the attachments to be issued and served on the said Baltimore and Ohio Railroad Company in the said county of Ohio and State of West Virginia, thus to subject the wages of the defendant so exempt as aforesaid, to the payment of the plaintiff's said judgment; that the said judgment was not assigned to, or in any way transferred to said Smith for any consideration deemed valuable in law, but was endorsed to him by said Stevens and sent to said Smith for the known purpose to each of unlawfully depriving the the defendant of his wages which they knew were exempt from levy or distress for the payment of said judgment under the laws of said State of Ohio; that this action is not prosecuted for the use of said Smith, but under an agreement between said Smith and Stevens, that, if said wages are recovered by reason of the institution of this action and the attachments issued thereon, the same are to be paid over to said Stevens when so recovered, less the charges or fees of said Smith for his services on behalf of said Stevens in this matter; that the cause of action in this case did not arise in the said county of Ohio or in the State of West Virginia, but in the county of Licking in the State of Ohio, and that he, the defendant, did not then or since reside in the said county of Ohio or State of West Virginia and was not found in said county or State or said city of Wheeling; and that his said wages were and are payable to him in the said State of Ohio and not in the State of West Virginia, and that he had not in said city of Wheeling or State any other effects or estate whatever. Therefore, said municipal court is without jurisdiction and said action should be dismissed and said attachments abated.

I have carefully examined the plaintiff's declaration, and also the attachments, returns thereon and affidavits and find

no. substantial defect in any of them; in fact, the said affidavits, attachments and returns thereon are more formal and technically correct than is often the case in proceedings of that character. The plaintiff's declaration is in form the same as that given in 4 Rob. Pr. 112, which was held sufficient in *Barnes* v. *Harris*, 4 Comst. 374. I am of opinion, therefore, that the defendant's demurrer to said declaration and his motion to quash said attachments were each properly overruled.

Sec. 5430, 2 Rev. Stat. of Ohio, edition of 1880 page 1322, is as follows: "5430. Every person who has a family, and every widow, may hold the following property exempt from execution, attachment, or sale, for any debt, damages, fine, or amercement to-wit:" (Here appear five clauses naming various articles of specific personal property—and then appears the sixth clause, which is as follows:) "6. The personal earnings of the debtor and the personal earnings of his or her minor child or children for three months, when it is made to appear, by the affidavit of the debtor, or otherwise, that such earnings are necessary to the support of such debtor, or of his or her family; and such period of three months shall date from the time of issuing any attachment or other process, the rendition of any judgment, or the making of any order, under which the attempt may be made to subject such earnings to the payment of a debt."

Sec. 7014 of said statutes is as follows:

"Sec. 7014. Whoever assigns or transfers any claim for debt against a resident of this State, for the purpose of having the same collected by proceedings in attachment in courts outside of this State, or whoever, with intent to deprive a resident of this State of a right to have his personal earnings exempt from application to the payment of his debts, sends out of this State any claim for debt against such person, for the purpose aforesaid, where the creditor and debtor, and the person or corporation owing the money intended to be reached by such proceedings, are within the jurisdiction of the courts of this State, shall be fined not more than fifty nor less than twenty dollars."

Deeming it proper in this case to pass upon the merits, I have not examined the defendant's pleas critically to deter-

mine whether or not they are entirely formal. I shall assume that they are sufficient in substance to present any defense which may be warranted by the facts therein contained and which I have hereinbefore stated, whether such defence be to the attachments or to the action.

I have above given the statutes of the State of Ohio bearing upon the subject; and the material question presented by the defense is, whether or not the courts of this State will, by comity or otherwise, give effect to said Ohio statutes in such manner as to exempt the wages of the defendant from attachment here, upon the ground that both the plaintiff and defendant were residents of said State of Ohio when said wages were earned and the plaintiff's debt contracted, and that said debt was sent to this State and this action instituted on it with the purpose and intent to evade the operation of said Ohio statutes?

The facts averred in the defendant's pleas do not put in issue any matters for which the attachments should be abated. The defenses to proceedings by attachment, as well as the proceedings themselves, are statutory.   Our statute provides what defense may be made to an attachment and how it may be made.   If the facts stated in the affidavit are not sufficient to authorize the issuing of the attachment, or the affidavit is otherwise insufficient, the court will quash it.   And if the defendant desire to controvert the truth of the facts stated in the affidavit, material to the issuing of the attachment, he may file a plea in abatement, denying the truth of such facts, and the issue on such plea shall be tried by a jury unless the same be waived by the parties.   Code ch. 106 § 19 p. 559; *Capehart* v. *Dowery*, 10 W. Va. 130.   These are the only modes of defense to an attachment provided by the statute.   We have already decided that the motion to quash the attachments was properly overruled; and as  none of the facts alleged in the defendant's pleas question the truth  of any of the facts stated in the affidavits, it must be assumed that said attachments were properly sued out.   The defense attempted to be made by said pleas in abatement has relation to the merits of the action, and if sufficient, can be made available there and thus abate the attachment by defeating the action.   In that event the statutes provides, that, "when

the attachment is properly sued out, and the case heard on its merits, if the court be of opinion that the claim of the plaintiff is not established, final judgment shall be given for the defendant." *Id.* I am therefore, of opinion that the court did not err in rejecting the defendant's pleas in abatement to the attachments.

In considering the merits of the defense made to the action in this case, it is sufficient to refer to the case of *Mahany* v. *Kephart,* 15 W. Va. 609, on the question of the jurisdiction of the court below.    In that case the facts were similar to the facts in this, as to the residence of the parties, the place of contracting the debt sued on, the stipulated place of payment, the character and residence of the garnishee—it being the same in both cases—the nature and place of earning the wages attached, the appearance of the defendant to the action and attachment, and the garnishee to the attachment, the judgment rendered in the action and on the attachment, and, in fact, in all other respects, except in that case the action was by the assignee of the debt, and there was no question therein about the effect of the laws of the State in which the cause of action arose as is the case in this action. With these two exceptions, all the questions raised by the defense in this case were made in that and determined to be insufficient by this Court.

It is insisted by the counsel for the plaintiff in error that the assignment of the judgment sued on, by Stephens to Smith is void, because it was made contrary to the statutes of the State of Ohio and for the purpose of defeating the provisions of said statutes.    Stevens is the legal plaintiff in this action, and he is none the less so because he sues for the use of Smith.    It is, therefore, immaterial whether the assignment is legal or founded upon an illegal or an insufficient consideration or not, or no consideration at all.    If the defendant satisfies the judgment in this action his indebtedness to Stevens will be discharged ; and it is no concern of his what consideration passed from Smith to Stevens for the claim, or what were the motives of either, unless he has sufficient reason to believe that Smith is not the owner of the claim and that this action is prosecuted without the authority or knowledge of Stevens.    *McBride* v. *Farmers' Bank,* 26

N. Y. 450; *Hardin* v. *Helton*, 50 Ind. 319; *Wetmore* v. *San Francisco*, 44 Cal. 294. In such case he could have had a rule against Smith or his counsel to show cause why the action should not be dismissed for the want of title or authority to sue, but he can not allege such matter in bar of the action. This brings us to the consideration of the question, whether or not the provisions of the Ohio statutes, and the facts alleged in the defendant's pleas, are such as to justify the courts of this State in denying the plaintiff, Stevens, the right to institute and prosecute this action in this State?

While it is true that the citizens of the several States are one people and one nation under the national government as the supreme authority within the limitations of the Federal Constitution, still the States themselves are severally sovereign, independent and foreign to each other, in regard to their internal and domestic affairs. The Federal Constitution has distinctly and wisely defined the spheres of the State and national authority and the relative subordination, or supremacy of the one to the other, by declaring that: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people." Thus by an express grant of all the powers belonging to the national government, those appertaining to the States are indicated with equal clearness and certainty; and necessarily consist of all the rightful powers of independent and sovereign republican governments, except in so far as they are modified or restricted by some express grant or prohibition of the Federal Constitution. Apart from this limitation, the sovereignty of the several States is as exclusive and independent of each other and of the national government, as it is of Great Britain, France, China or any other foreign government or nation. Such being the case, it results therefrom that the State Constitutions and laws have no extra-territorial force anywhere, except as conceded to them by mere comity. Were it otherwise, their condition would be incompatible with State sovereignty and independence of each other, inasmuch as the extra-territorial force of the laws of one State, within the territorial limits of another, would be common alike to all, and none would be either sovereign or independ-

ent in their internal and domestic affairs. Ror. on Inter. St. Law, p. 10, *et seq.*; *Pennoyer* v. *Neff*, 95 U. S. 714; *Bank of Augusta* v. *Earle*, 13 Pet. 519.

In Rorer on Inter-State Law, 167-8, the doctrine, on this subject, is so well stated, that I feel warranted in adopting its language, which is as follows:

"It is a principal universally recognized, that laws have no *exta-territorial* force. Their authority is limited to the territorial jurisdiction of the State or country that enacts them, so far as their right or power of enforcement or claim to obedience is concerned. It is true that there are certain principles of the law that by natural authority are common alike to all civilized countries, whether simply remaining so by the law of nature, or re-enacted or declared by statute, and in either case are but parcel of the same universal law; but these universal laws are no exception to the rule above stated, as to *extra-territorial* force, for they, too, are confined to their own territorial limits. That is, the territorial limits of civilization, and as such become a part of the local law of all civilized states. Whenever the *municipal* laws proper of one State are recognized and enforced in another, it is merely by *comity* or the latter, and upon the presumption that they are tacitly adopted as matters of right, when not inimical to its own laws or policy, or interests of its people. But this *comity* is never extended to the laws of remedy, but has been genererally regarded as extending to matters *ex contractu*, or such torts as are in violation of natural right regarded as such among civilized people. Natural right being that which has the same force among all men."

In *Foster* v. *Glazener*, 27 Ala. 391, it was held that: "It is is a well-settled principle of international law, that every attempt on the part of one nation or State, by its legislation, to grant jurisdiction to its courts over persons or property not within its territory, is regarded elsewhere as a mere usurpation; and all judicial proceedings, in virtue of it, are held utterly void for every purpose." The necessary implication from this is, that, if the Legislature of one State attempts to control the action of the courts of another State, such attempt will be regarded by such courts as a mere nullity.

Laws relating to contracts and their enforcement, affect

either the contract itself or the remedy.  The law of the
*forum*, or the place where the action is brought, governs as
regards the remedy in the enforcement of contracts, and the
*lex loci contractus* determines their interpretation and valid-
ity.    *Scudder* v. *U. N. Bank*, 91 U. S. 406; *Williams* v.
*Haines*, 27 Iowa 251; *Pickering* v. *Fisk*, 6 Vt. 102; *Indiana* v.
*John*, 5 Ham. (Ohio) 218.

Exemption laws pertain to the remedy and depend upon
the law of the *forum*, and not upon the *lex loci contractus* for
their enforcement.    *Helfenstein* v. *Cave*, 3 Iowa 287: *Newell*
v. *Hayden*, 8 *Id*. 140; *Leiber* v. *U. P. R. Co.*, 49 *Id*. 688;
*Com. N. Bank* v. *Chicago, M. & St. P. R'y Co.*, 45 Wis. 172.

Nor will the courts of one State enforce the statutory pen-
alties of another State.    Such penalties can only be enforced
in the courts of the State by the laws of which they are
imposed; and they cannot be enforced elsewhere either by
force of the statute creating them, or upon the principles of
comity.    Rorer on Inter-St. Law, 148 and cases cited.

The effect given to the statutes of one State by the courts
of a sister State, so far as they attempt to control the remedy,
is wholly an act of comity and not a recognition of a right.
And this comity will not be recognized, unless there is no
reason to the contrary; it is extended only where there is no
interest of the citizens of the State or of a sister State, seek-
ing to avail themselves of the protection or benefits of the
*lex fori*, to be injuriously affected by such recognition.
Story's Conft. of Laws, §§ 414, 415, 416.    "The citizens of
our sister States have, by the Constitution of the United
States, the same privileges with our own citizens, and any
one of them who has availed himself of the legal remedies
furnished by our laws, to secure the payment of a debt due
him, has the same claim to the assistance of our courts that
one of our own citizens would have."    *Paine* v. *Lester*, 44
Conn. 196–204; *Corfield* v. *Coryell*, 4 Wash. C. C. 371; *Mor-
gan* v. *Neville*, 74 Pa. St. 52.

It is apparent from these principles and authorities, that
neither the Ohio statutes above quoted, nor the facts alleged
in the defendant's pleas, are any justification for the courts
of this State to deny the plaintiff the right to institute and
prosecute this action.    It cannot be questioned that a citizen

of this State, having a claim of the same character as that sued on, could proceed in our courts for its collection without any regard or reference whatever to the exemption and penal laws of Ohio, although the debt had been contracted in said State. And the plaintiff here, under the mandate of the Federal Constitution having the same right to the assistance of our courts, that our own citizens have to enforce the payment of a debt, he unquestionably has the right to prosecute this action. But if the question presented was simply one of comity, the right of the plaintiff to sue would be entertained, and the privileges claimed by the defendant denied. Comity, as we have seen will never be extended to matters which might injuriously affect our own citizens. If one of our citizens had a claim similar to the one here sued on, and the record in this case does not show that the usee in this case is not a citizen of this State, it would certainly injuriously affect his interests to deny him the assistance of our courts to enforce the collection of such claim by the only means, perhaps, that could be made effective. In addition to this, and for another and, perhaps, a more conclusive reason, the courts of this State ought not by comity or otherwise to give effect to these Ohio statutes. The exemption laws of no two States are precisely the same. Those in the State of Ohio differ greatly from those of this State. Our statutes are a part of the administration machinery of the State for carrying out the purposes and policy of its government in the various departments, and are essentially local and adapted to our peculiar condition and the best interests of our people. If, therefore, we were to undertake to enforce the exemption laws of the State of Ohio, the same reason would require the enforcement of such laws of every other State and country; this would not only be injurious to the interests of our own citizens, but it would create such confusion and diversity that it would be impossible for the courts to administer them or the people to have any just idea of their rights under them. I am, therefore, of opinion that the plaintiff was entitled, as a matter or right, to institute and prosecute this action in the municipal court of Wheeling, and that the defendant can neither as a right nor by comity obtain the protection of the said statutes of the State of Ohio in the courts of this State-

The defendant's second bill of exceptions does not purport to give *all the evidence,* but only certain depositions to which he objected as irrelevant.    This action was tried by the court and not by a jury; and in such cases, it has been frequently held by this Court, that it is not error, for which the Appellate Court will reverse, for the court below to hear illegal testimony if there is enough legal testimony to justify the judgment.    *Nutter* v. *Sydenstricker,* 11 W. Va. 535; *Abraham* v. *Swann,* 18 *Id.* 274.    And the burden, being on the plaintiff in error to show *affirmatively* by the record, that error has been committed by the trial court to his prejudice, this Court, in the absence of a bill of exceptions containing all the evidence or all the facts proved on the trial, will presume that there was sufficient proof to support the finding and judgment of the court.    *Mann* v. *Bryant,* 12 W. Va.; *Miller* v. *Shrewsbury,* 10 *Id.* 115 ; *Harman* v. *Lynchburg,* 33 Gratt. 37.

But it seems to me that these depositions were proper. They were taken to prove the authenticity of the transcript of the judgment offered in the evidence and on which this action is founded, and the jurisdiction of the justice who rendered said judgment in the State of Ohio.    The defendant had pleaded *nul tiel record,* and it was necessary for the plaintiff to show that the record offered in evidence was not only a true record, but that it was rendered by a court of justice of competent jurisdiction.    If the transcript did not sufficiently show these facts, then it was proper in such case to prove them by the justice.    1 Gr. on Ev. § 513.    If, however, these facts were sufficiently shown by the transcript, then, the reading of the depositions could in no manner have prejudiced the plaintiff in error.    I, therefore, think that no error to the prejudice of the plaintiff in error, appears in his second bill of exceptions.

Having carefully considered all the questions fairly arising upon the record and finding no error for which the judgment complained of should be reversed, I am of opinion that said judgment be affirmed with costs to the defendant in error and damages according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.