# CHARLESTON.

ALTMEYER v. CAULFIELD et al.

Submitted January 23, 1893—Decided April 1, 1893.

1. ATTACHMENT—DEBT NOT DUE—AFFIDAVIT—FOLLOWING STATUTE.

An affidavit for an attachment is sufficient, if it is in substantial compliance with the terms of, or necessarily and properly implies, the case provided for by the statute, although it does not literally follow the language thereof.

2. ATTACHMENT—PROMISSORY NOTE—NEGOTIABLE INSTRUMENTS.

An attachment can be sued out in equity against an absconding debtor by the accommodation maker of a negotiable note not yet due, although such maker has not yet paid such note, as he is absolutely bound to do so, when it becomes due.

3. ATTACHMENT—PROMISSORY NOTE—NEGOTIABLE INSTRUMENT—AFFIDAVIT.

It is not a sufficient ground to quash an attachment, that it does not technically use the words "in the suit," as that sufficiently appears from the filing of the affidavit in the suit, and stating therein that the affiant is justly entitled to recover the sum of four hundred dollars by virtue of a negotiable note describing it, and that the same is due and owing and wholly unpaid to affiant, and that affiant has instituted a suit in chancery for the purpose, and is about to issue an attachment in such suit; it further appearing that the attachment was issued in said chancery suit, and the debt was one that could be properly recovered therein.

4. ATTACHMENT—CONSTRUCTION OF STATUTE—AFFIDAVIT.

The remedy by attachment being authorized alone by statute, and being in derogation of the common-law, and being, moreover, summary in its effects and liable to be used oppressively, such statute will be strictly construed. The preliminary affidavit required by the statute must contain each element thereby prescribed.

5. ATTACHMENT—AFFIDAVIT.

The first section of chapter 106 of the Code of 1868 was by act of March 24, 1882, amended and re-enacted so as to read "may have an order of attachment," etc., "on filing with the clerk of the court * * * his own affidavit, or that of some credible person, stating the nature of the plaintiff's claim, and the amount at the least which the affiant believes the plaintiff is justly entitled to recover in the action or suit," etc.; the amendment be-

ing the insertion of the words "at the least," the affidavit must contain the words "at the least," or the equivalent thereof, being a material qualification of the essential elements—the amount stated.

6. ATTACHMENT—AFFIDAVIT.

A safe rule in the construction of section 1 of chapter 106 as thus amended is to abide by the words the lawmaker has seen fit to use, so that no clause, sentence or word shall be superfluous, void or insignificant.

W. H. HEARNE for appellant cited Code, c. 106, s. 1; 18 Gratt. 854; Dr. Att. (6th Ed.) 106a; Dan. Att. §§ 11, 12, 33; 21 W. Va. 213; 10 W. Va. 136; 25 W. Va. 590, 601; Dr. Att. (7th Ed.) §§ 95, 96; 28 Kan. 822; 2 Wall. 581, 588; 37 Wis. 344; 29 W. Va. 779; 5 W. Va. 25; 3 Munf. 176; 10 Gratt. 292; 6 Munf. 176; Dr. Att. § 27a.

CALDWELL & CALDWELL for appellees:

I.—*Appellees had a right to make the motion to quash the attachment.*—10 W. Va. 135; Code, c. 106, ss. 23, 19; 4 W. Va. 130; 2 H. & M. 312; 7 Leigh 314; 14 W. Va. 298; 17 Mich. 511.

II.—*Affidavit for attachment should have stated that the plaintiff's claims were recoverable in the suit at bar.*—10 W. Va. 136, 138, 139; 18 Gratt. 854; 1 Metc. (Ky.) 479, 471; 21 W. Va. 213, 217; Dr. Att. (7th Ed.) §§ 87 b, 106 a, 107 a, 113; Dan. Att. §§ 11, 12, 27; 1 Tex. 17; 66 Tex. 610.

III.—*Appellant could not recover in this suit on the second note.*—1 Par. Notes and Bills (Ed. 1863) 244; 2 Dan. Neg. Inst. § 1339; 19 Pick. 123.

IV.—*Affidavit for attachment should have stated the amount at the least that the plaintiff was entitled to recover.*—Cases cited above under No. II.; 29 W. Va. 779.

V.—*Altmeyer could not recover in the case at bar, for or on account of the second and third notes.*—Dr. Att. §§ 27 a, 28, 30 and 83.

Form of Order of Attachments, Warth's Code (3d Ed.) page 743; 1 Revised Code, Virginia (1819) page 476, Sec. 5.

Ad. Eq. (s. p.) 324, 325 and 326; 21 W. Va. 211; 3 Leigh 306; 2 Dan. Neg. Inst. § 1339.

VI.—*The facts stated in the affidavit were not sufficient to show*

*conclusively that Caulfield left the State with intent to defraud his creditors.*

This must be shown conclusively.—26 W. Va. 224.

It is not shown.—10 W. Va. 136, 139; 21 W. Va. 214, 216.

HOLT, JUDGE:

As the law was by the Code of 1868 (see section 1, c. 106, Code 1868) the plaintiff was required, before being entitled to an order of attachment against the property of the defendant, to file with the clerk of the court his own affidavit or that of some credible person, stating the nature of the plaintiff's claim and the amount the affiant believes the plaintiff is justly entitled to recover in the action, *etc.* By the act of March 24, 1882, this section was amended so as to read as the law now is in that part of section 1, c. 106, Code 1891; that is, the words "at the least" were inserted immediately after the word "amount," so as to read, "stating the nature of the plaintiff's claim and the amount at the least the plaintiff is justly entitled to recover in the action," *etc.* Said act made in that part of the section no other change whatever. The question is: Is this phrase, like the phrase "as near as may be," merely a directory caution addressed to the affiant, which need not go into the affidavit, or is it intended to be put into the written statement as an essential qualification of that, which must be stated and vouched for by the affiant's corporal oath, viz. the amount he is justly entitled to recover? We think the latter the correct view, for the following reasons:

The legislature is presumed to have possessed complete knowledge of the subject-matter, concerning which it has prescribed this rule of law, and that it has chosen its expressions with reference thereto, using no unmeaning words or phrases; and especially where the phrase in question is the only amendment made, the best rule to arrive at the meaning of the statute as amended is to abide by the words the lawmaker has used, so that no clause, sentence or word shall be superfluous, void or insignificant. The nature of the subject, the character of the statute amended, the context, and the effect and consequences of the statute must be regarded; and, as we are to presume that the lawmaking

power had some intelligent object in view, the end, towards which this amendment was directed, and the cause, which moved the legislature to make it, must also be considered in ascertaining the meaning in this regard of the act as amended.

As to the general character of the act, it relates to "attachment proceedings which spring exclusively from the statute and are in derogation of the common-law. They are somewhat severe in their character, seizing and holding the property of the alleged debtor for the payment or satisfaction of a claim or demand yet to be established, and for which a judgment may or may not be rendered. The only authority for this proceeding, and the only shield interposed for the protection of the debtor, is the affidavit, which the law requires to be made before the attachment shall issue. A full and careful compliance with the statute as to what the affidavit shall contain and express  \*  \*  \* is most reasonable and just." *Capehart* v. *Dowery*, 10 W. Va. 130–135.

It is summary in its effects, and liable to be abused and used oppressively; therefore "its application must be carefully guarded, and confined strictly within the limits prescribed by the statute. An order of attachment is an execution by anticipation. \* \* \* The claim may be entirely unfounded; and even where the demand is just, the order may issue ,and be levied before it has become due or payable" (*Delaplain* v. *Armstrong*, 21 W. Va. 211–213) or, I may add, without being reduced by proper credits and counter-claims, thus destroying the debtor's business and credit, and causing his complete financial shipwreck; whereas by the ordinary proceeding of trial and judgment before seizure of his property his business would have been left intact, and his financial standing unimpaired. And the court, in a still later case (*Chapman* v. *Railway Co.*, 26 W. Va. 299–322) commenting on these and other cases, where this strict rule was applied, says, Judge JOHNSON delivering the opinion : "We do not desire to relax the rule in such cases; the affidavit lies at the very foundation."

Under this section, as it was before the amendment, the creditor might swear that he was justly entitled to recover,

say five hundred dollars, the amount of the note sued on, when at the same time he owed the defendant three hundred dollars, say for a piano; and so in other cases, especially cases of open accounts, or in cases of unliquidated damages. The words "at the least" were added to purge his conscience as to the amount due, giving in his written statement the true amount "at the least," after giving all credits and allowing all proper discounts, and not making loose and random statements as to the amount of damages he has suffered and is entitled to recover, as is often done in the writ and declaration—a very important object when we consider how harsh and oppressive this *ex parte* proceeding may be made.

Therefore the lawmaker has seen fit to put the affiant to the stress of giving in the written statement under oath the amount, and that this is the true amount "at the least;" and he is not excused for giving the full amount as it may appear justly due in the note or account sued on. But, more than that, it gives some effect to the words introduced as an amendment—an amendment not of the common-law, but of a statute—and relieves the lawmaking power of the imputation of having done a vain and idle thing by making this one insertion, and yet leaving the statute in meaning and effect just as it was before.

I therefore regard this qualification of the amount sued for just as essential and important in the eyes of the lawmaker as the amount itself, and the amount thus qualified must be stated in the affidavit. The phrase "at the least" qualifies the amount stated, and not the mode of statement. The affidavit is the foundation of the jurisdiction of the court, and there can be no valid attachment without a sufficient affidavit; and as there can be no sufficient affidavit which does not give a sworn written statement of the amount, so for the like reason such written statement can not be sufficient which leaves out what the legislature has thus seen fit to prescribe as a qualification of the amount so to be given; and the creditor can not leave out such qualification as vain and futile.

We think the judgment complained of is right, and ought to be affirmed.

DENT, JUDGE, (*dissenting*) :

Peter J. Altmeyer brought suit in equity against Thomas A. Caulfield in the Circuit Court of Ohio county on the 21st day of October, 1891, and on the same day filed his affidavit in such suit and sued out an attachment. The affidavit is as follows, to wit :

"Peter J. Altmeyer makes oath and says that he is justly entitled to recover from Thomas A. Caulfield the sum of four hundred dollars with interest thereon from the 20th day of October, A. D. 1891, for money borrowed by the said Thomas A. Caulfield from the German Bank of Wheeling upon a negotiable note, upon which the affiant was accommodational maker for the said Thomas A. Caulfield, and in which the said Thomas A. Caulfield was payee and indorser, which said note affiant paid at the maturity thereof, and which is now due and owing to affiant by said Thomas A. Caulfield and wholly unpaid to said affiant.

"Affiant further deposes and says that he is justly entitled to recover from the said Thomas A. Caulfield a further sum of four hundred and twenty five dollars, which will become due and payable on the 26th day of October, 1891, for money borrowed by the said Thomas A. Caulfield from People's Bank of Wheeling upon a negotiable note signed by said affiant as accommodational maker for said Thomas A. Caulfield, and made payable to said Thomas A. Caulfield, and discounted by said Caulfield at said People's Bank of Wheeling, and which said note has been paid before the maturity thereof by said affiant, and has been delivered to said affiant by People's Bank of Wheeling.

"The affiant further deposes and says that he is justly entitled to recover from the said Thomas A. Caulfield a third and additional sum of four hundred and fifty dollars, which will become due and payable, according to the best recollection of affiant, he not having said note in his possession, and being unable to learn who has, after diligent inquiry, on the 5th day of December, A. D. 1891, for money borrowed by the said Thomas A. Caulfield upon a promissory note, upon which the affiant is accommodational maker for the said Thomas A. Caulfield, and the. said Thomas A. Caulfield is payee and indorser thereon, and which the said

Thomas A. Caulfield had discounted, and which said note the said affiant will have to pay when the same becomes due.

"The said affiant says that he has instituted a suit in the Circuit Court of Ohio county, West Virginia, in chancery, against the said Thomas A. Caulfield, for the recovery of the said several sums hereinbefore mentioned, and is about to issue an attachment in the said suit against the property of the said Thomas A. Caulfield.

"The affiant further deposes and says that the said Thomas A. Caulfield is now a non-resident of the State of West Virginia, but that the said Thomas A. Caulfield was at the time of contracting the debts hereinbefore mentioned a resident of the state of West Virginia, and that at the time of giving such credit to the said Thomas A. Caulfield the affiant believed that the said Thomas A. Caulfield would remain a resident of the state of West Virginia. The affiant says that at the time of contracting the said indebtedness herein mentioned to him, the affiant, and at the time of the affiant giving the said credit, the said Thomas A. Caulfield had rented and furnished rooms in the city of Wheeling, and was occupying those rooms with his family; had also rented a storeroom in the said city of Wheeling, and was carrying on what is commonly known as a music-store, to wit, selling organs, pianos and musical instruments of different kinds, and had a stock of such musical instruments and materials in the said store, amounting in value to several thousand dollars in all.

"The said affiant says that the said Thomas A. Caulfield had left the state of West Virginia with intent to defraud his creditors.

"The affiant says that before his departure the said Thomas A. Caulfield stated to the party, from whom he was renting the rooms where he resided that he, said Caulfield, was going to move over to an hotel in the central part of the city of Wheeling, and vacate the said rooms, taking his furniture and household effects therefrom, and his family, but, instead of moving the same to the said hotel, he, the said Caulfield, moved his furniture and household effects out of the state, and either at that time, or within a

very few days thereafter, he suddenly left the state, without notifying any one of his intention to do the same, locking up his storeroom, and leaving the same locked up, and has been absent therefrom and from the state with his family since the 17th day of October, A. D. 1891, and no word of any kind has been received, as the affiant has been informed, by any one from said Caulfield since his departure, save and except that affiant received a telegram from Philadelphia, Pennsylvania, in the words following, purporting to have been sent by the said Thomas A. Caulfield: 'Will assign my stock to you, if I do not get money for my property within seven days. Thomas A. Caulfield.'

"The affiant says he knows of indebtedness of the said Thomas A. Caulfield aggregating several thousand dollars, and has heard of other indebtedness without hearing the amount of the same.

"Affiant says that all of the property that he knows of actually belonging to the said Thomas A. Caulfield is the stock in his store in the city of Wheeling, which will not be sufficient to pay the present known indebtedness of the said Caulfield, and which indebtedness will probably be largely increased when it becomes generally known that the said Caulfield has fled from the said city of Wheeling, which fact is only known to a few persons at present.

"PETER J. ALTMEYER."

As the basis of the suit three notes are described in the affidavit—one due and paid; one not due, but paid off, and held by affiant; and one not due, and the holder thereof unknown to affiant at the time of the institution of the suit.

On the 2d day of October, 1891, the Brown & Simpson Company, a subsequent attaching creditor, filed its petition under section 23, c. 106, of the Code, disputing the validity of the plaintiff's attachment. Such proceedings were had in the case that the said Circuit Court by its final decree on the 16th of January, 1892, quashed the said attachment, because the affidavit failed to state that the affiant was justly entitled to recover "*in the suit*" at bar the amounts specified, and failed to state the amount "*at the least*" which he was entitled to recover; the omission of the words italiciz-

ed, "in the suit," and "at the least," having been claimed by the appellee and held by the court to be fatal to the affidavit. It is admitted in the argument and shown by authority, "that where the language used is in substantial compliance with the terms of, or necessarily and properly implies the case provided for, by the statute, although not literally following its words," the affidavit should be sustained. Drake, Attachm. (6th Ed.) §§ 103, 106, 107.

The affidavit in this case sets out a negotiable promissory note; states accurately the amount thereof; that the plaintiff is justly entitled to recover the same; that it is due and owing and wholly unpaid; that affiant has instituted a suit in chancery to recover the same and is about to issue an attachment in said suit. The affidavit was filed and the attachment was issued "in said suit," and it is plainly apparent from the pleadings, so far as they have proceeded, that the affiant is justly entitled to recover the amount sued for in said suit, provided the grounds of the attachment exist. In the language of appellee's counsel, "the courts will not be acute to find reasons for sustaining an attachment;" neither will they exercise acuteness in finding technical objections to quash an attachment which substantially complies with the law, at the instance of a subsequent attaching creditor. The affidavit, the attachment, and the bill all show the suit, in which affiant is justly entitled to recover the sums set forth, and the court can not imply the existence of any other suit; and the affiant would not be heard to say, in answer to an indictment for perjury, that he meant he was entitled to recover said amounts in a different suit from that in which the affidavit was filed. Courts of justice will hardly permit themselves to be trifled with in this manner.

Affiant having become the *bona fide* holder of the second note by its payment was entitled to sue for the amount thereof, although not yet due, under the latter clause of section 1, c. 106, of the Code: "And such attachment may be sued out in a court of equity for a debt or claim, legal or equitable, whether the same be due or not, upon any of the grounds aforesaid." For the payment of the third and last of said negotiable notes affiant was absolutely liable as

the maker to the holder thereof and could in no event escape therefrom. Hence there is no good reason why he could not maintain his suit in equity at least for an equitable claim not yet due upon any of the grounds prescribed by the statute for the issuance of an attachment, as he was entitled to the protection of a court of equity against the fraudulent conduct of him, to whom he had loaned his credit. The debt, for which he was liable, was fixed and certain, and must be absolutely paid by him at maturity, although not yet due, while the person, to whom he must look for repayment, was absconding and fraudulently removing his property beyond the legal process of the court.

The omission of the adverbial phrase "at the least" is maintained by the appellees and held by the majority of this Court to be fatal to the affidavit and attachment ; that this phrase was not intended to modify the word "amount," used in connection therewith, but was used to qualify and limit the actual sum stated in the affidavit when inserted therein in lieu of the word "amount ;" and that the phrase *in haec verba* is expressly required by the statute to be stated, and no other language or expression however potent can supply the place of such omission, and the court can not inquire into the expediency or wisdom thereof.

"The remedy by attachment is harsh, not only towards the defendant, but also to the other creditors, over whom the attachment-creditors obtain priority ; and it is most just and reasonable, that it should be strictly confined within the limits prescribed, and to a careful compliance with the requirements of the statute, as to what the affidavit should contain and express. The appellant having violated a plain direction of the statute in the preparation of the affidavit, notwithstanding it may be apparent from the affidavit taken as true, that he is justly entitled to recover in any event the sum stated, the Circuit Court committed no error in quashing the attachment. *Claflin* v. *Steenbock*, 18 Gratt. 854 ; *Capehart* v. *Dowery*, 10 W. Va. 130 ; *Sandheger* v. *Hosey*, 26 W. Va. 224 ; *Ruhl* v. *Rogers*, 29 W. Va. 779 (2 S. E. Rep. 798).

In this decision of the Court I can not concur, as it seems

to me that the insertion of this adverbial phrase was purely for the purpose of qualifying the word "amount," and was a direction to the affiant, not as to the verbal construction of the statement to be made, but what ultimate amount he should insert in his affidavit, and that in doing so he should fix it only at such sum as he would be justly entitled to recover, after allowing all just payments, discounts and counterclaims within his knowledge; or, in other words, that he should strike a true balance, and, if he did not do so, he would be guilty of and liable to prosecution for perjury in willfully making a false affidavit. I can not perceive that it is any more a requirement to use this phrase than it is to use the words "amount," "believe," "justly," "nature of claim," "in the suit," or others similar. As far as I have made search, I have not been able to find a single decision that requires the use of actual words, if the spirit of the statute is complied with; but in all cases where the attachment has been quashed, it was done not because of the failure to use the words of the statute, but because the same or equivalent words were not used. My conclusion is that the "amount at the least" should be construed as one word, descriptive of the sum to be stated in the affidavit.

Admitting, however, that it was a direction by the legislature as to the manner of the statement, it has been held that it is not necessary to follow the language of the statute, if that used is "a substantial compliance with the spirit of the law." *Gutman* v. *Iron Co.*, 5 W. Va. 22. The statute requires a statement of facts, and not of words; and if the words used include within their common acceptation the facts required, the affidavit will be sufficient, although the words used may not be identical with the language of the law. For this reason an affidavit in the exact language of the statute was held bad. Drake, Attachm. § 107a.

To claim otherwise is to reduce the matter to a mere mechanical and verbal formation of the statement to be made, without regard to its sense or meaning, or "compliance with the spirit of the law," and violates that principle of statutory construction which requires the language used to be construed in accordance with its common acceptation to

effectuate the ends of justice, rather than to be set as a trap to trip the unwary litigant.

In this case affiant makes a positive statement of the amount he is justly entitled to recover as the sum of four hundred dollars, and then adds that it is due and owing and wholly unpaid to him from the defendant. Such positive statement of the amount, coupled with the words "due," "owing," and "wholly unpaid," according to common acceptation and meaning, excludes the idea, that there are any just payments, offsets or counterclaims of any kind against the demand, and therefore, as strong as language can do it, shows that the sum is stated at the amount at the least which affiant believes he is justly entitled to recover.

My conclusions in this matter are strengthened by the following authorities : In the case of *Kennedy* v. *Morrison*, 31 Tex. 207, the district court quashed the attachment because the affiant did not state that the defendant was "justly" indebted, *in haec verba* according to the requirement of the statute. On appeal this judgment was reversed, and the judge, in rendering the opinion of the court, says : "The pleadings of the plaintiff in the attachment filed under oath must show conclusively to the court a certain amount 'justly' due ; and whether or not it is justly due does not depend upon the sworn statement of the party of the justness, but on the proper allegations of the indebtedness, showing the same is just, and this statement to be under oath. There can be no doubt that any court would upon demurrer to the petition decide that the defendant was 'justly' indebted agreeably to the statement."

And in the case of *Grover* v. *Buck*, 34 Mich. 519, the court held : "An affidavit for a writ of attachment, which states positively the amount due over and above all legal sets-off, is not objectionable for want of the qualifying words, 'as near as may be.' The affiant states the sum 'as near as may be' when he states it exactly."

And in this case affiant states the amount at the least when he states it exactly, and on demurrer to the affidavit filed the court could do nothing else but find a judgment for the exact amount stated as being the amount at the least recoverable. My opinion is to reverse the judgment,

and I do not concur in the law stated in syllabus 5, as it is inconsistent with syllabus 1.   Syllabus 5 may be an exception to the rule of law contained in syllabus 1, but, if so, it is the only one yet discovered by the courts.   A majority of the Court, being of a contrary opinion, find no error in the decree of the Circuit Court quashing the attachment, and it is therefore affirmed.

AFFIRMED.