# CHARLESTON.

WALDRON *et al. v.* HUGHES *et al.*

### Submitted Sept. 16, 1897—Decided Nov. 27, 1897.

1.  PARTNERSHIP—*Partner's Liability.*
    A person cannot be held liable for holding himself out as a member of a firm, unless the contract, debt, or assurance sought to be enforced was entered into, incurred or executed through reliance on the credit of such person as an inducement thereto. (p. 131).

2.  PARTNERSHIP—*General Partner—Partner's Authority—Firm Liability.*
    The implied authority of a general partner does not extend to contracts for liquidated damages, penalties, or forfeitures, as such contracts do not belong to the ordinary usages of mercantile law. In such cases, to bind the noncontracting members of the firm, there must be either express authority prior thereto, or ratification thereafter, or they must in some manner inure to the benefit of the firm. (p. 132).

Error to Circuit Court, Mingo County.

Action by M. H. Waldron and another against W. R. Hughes and others on a contract. There was a judgment for plaintiffs, and defendants C. O. Thompson and T. T. Brewster bring error.

*Reversed.*

WELLS GOODYKOONTZ, for plaintiffs in error.

WATTS & ASHBY and ROBERT H. HOYLE, for defendants in error.

DENT, JUDGE:

C. O. Thompson and T. T. Brewster, on writ of error to a judgment of the Circuit Court of Mingo county against them in favor of M. H. and H. A. Waldron, rely on the following assignment of errors, as set forth in their petition: "(1) The court erred in not quashing the affidavit for an order of attachment issued November 6, 1895. (2) The court erred in not quashing the order of publication had at November rules, as well as the affidavit therefor. (3) The court erred in overruling the demurrer to so much of the plaintiffs' declaration as relates to the special count thereof. (4) It was error to have a trial by jury until issues were made up as to each of the pleas of defendants, and in this case there was no reply to the defendants' plea of *non assumpsit*; but then, if the court should construe the language of the order to imply that issues were made up as to each plea, then it was error not to have sworn the jury to try the issues instead of the issue. (5) The court erred in admitting as evidence the paper writings dated September 25, 1894, and March 5, 1895, respectively set forth in bill of exceptions No. 1, and embraced in bill of exceptions No. 4. (6) The court erred in refusing as many as six legitimate questions to be answered by the witness Brewster, as set forth in bill of exceptions No. 2. (7) The court erred in refusing to allow the witness Brewster to answer the question set forth in bill of exceptions No. 3. (8) The court erred in permitting one of the plaintiffs, while such plaintiff was testifying in his own behalf, and in the midst of his cross-examination in chief, to be called aside by his counsel, and a private conference had with such witness, and such witness then allowed, after such secret conference, to proceed with his testimony, as set forth in bill of exceptions No. 5. (9) The court erred in refusing to give instructions Nos. 1 and 2, embraced in bill of exceptions No. 6, to the jury. (10) The court erred in overruling defendants' motion to set aside the verdict, and grant a new trial, for the reason that such verdict was contrary to the law and the evidence."

1. The objection to the affidavit for the order of attachment is that it fails to recite that "the action at law is about to be or is instituted;" neither does it show where the action is pending. Neither of these things is required to

be set out in the affidavit.    Its heading gives the style and character of the suit, and shows in what clerk's office it is made and filed, and therefore in what suit.    *Altmeyer* v. *Canfield*, 37 W. Va., 847, (17 S. E. 409).

2.  The objection urged against the order of publication is that it was prematurely made before the attachment was returned executed, as required in section 17, chapter 106, Code.   The order of publication in this case was had under section 11, chapter 106, Code, and was, therefore, not quashable, although its issue and publication would not dispense with the requirement of section 17, chapter 106, Code, after the attachment was returned executed, unless the defendants appeared to answer the action without awaiting such second order of publication.    Defendant Brewster was served with summons, hence the attachment and order of publication were wholly unnecessary as to him ; and, the attachment having been abated, no error in relation thereto can affect his rights in any manner, and he cannot complain thereof.    Defendant Thompson, having appeared before the order of publication required in section 17, chapter 106, was made, cannot now complain because it was not made, for its only object would have been to notify him of the pendency of the suit and attachment.

3.  The demurrer to the declaration appears to have been abandoned, as no mention of it is made in the argument. The declaration shows on its face no substantial defect. The writing declared on was not in any manner made a part of the declaration, and therefore cannot be considered on demurrer.

4.  That the issues were not properly made up, and that the jury was sworn to try the issue, and not the issues, is fully answered by the case of *Kinsley* v. *County Court*, 31 W. Va., 464, (7 S. E. 445); Code, c. 134, s. 3; 1 Bart. Law Prac. 464, 477, 481.

5.  The special count does not show whether the writing declared on was under seal or not.    The one offered in evidence is a sealed instrument, followed by an addition thereto, which was also intended to be a sealed instrument, but which omits from the body thereof the word "Seal," although it has a scroll containing the word "Seal" affixed to each signature, showing the evident intention of the

parties thereto.   It is a settled rule of law that a partnership not having a seal cannot be bound by one partner signing its name to such instrument.   But if the instrument be such as not necessarily to require a seal, such sealing will be deemed mere surplusage, and the instrument be regarded as a simple written contract of the partnership.   Such are the paper writings in this case, and they are sufficiently described in the declaration.   Hence there is no material variance between the allegations and proof.   The consideration for the five hundred dollars is sufficiently set forth, being thirty days' extension of the contract.   Nor is it possible to put the strained and ambigous construction on the second writing as insisted on by counsel.   It is plainly evident that the plaintiffs were intended to be the payees therein, and not the Fairfax Coal & Coke Company.   It is true that the last clause of the second contract, to wit, "If you don't do as above without recourse at law, and all contracts to be void," is ambiguous, or at least doubtful.   This and the various other errors assigned can all be considered under the last head, to wit, the motion to set aside the verdict and grant a new trial.   The defendants plead *non assumpsit* and filed a special plea denying the existence of the partnership. This cast on the plaintiffs the burden of proving the partnership, or proving that the defendants held themselves out as such in such manner as to induce plaintiffs to enter into the contracts on the strength of their credit.   This cannot be so as to the first contract, for the reason that the defendants Thompson and Brewster, here appellants, were entirely unknown to the plaintiffs at the time of making the same.   In relation to the second contract, the partnership is not proven, but the plaintiffs introduced the following three letters for the purpose of showing that the appellants held themselves out as such partners, or interested in such partnership, to wit:

"Thacker, Logan Co., W. Va., Nov. 8, 1894.   Dr. M. H. Waldron, Fairfax, W. Va.—Dear Sir: Your letters to Mr. Hughes are both received here, and have my attention. Hughes being absent for some days up the line on business, I opened them, as I have an associate interest in the lease.   Your letters indicate that you are somewhat doubt-

ful as to Mr. Hughes' intentions; do not see why this is so. As I understand it, he has spent money in having the seam opened up, and has a man working there now. If the man has quit, it is not Hughes' fault. Mr. Hughes was down to see you last week, to see what could be done about getting a mill in to run through the winter, getting out lumber for construction purposes. Mr. Hughes spoke about seeing about some rails while in Roanoke. Once the heavy work is commenced, you will have no fault to find. This mine has been opened up and gotten to a ten car a day capacity quicker than ever has been done in the state. The reason why we can do a great deal in a short time, once the work has commenced, is because we make a careful diagnosis before we commence treatment. Our supt. and engineer will be down as soon as they can be spared to prescribe. Yours, very truly, Thos. T. Brewster.''

"Thacker, Logan Co., W. Va., Nov. 12, 1894. Dr. M. H. Waldron, Fairfax, W. Va.—Dear Sir: Mr. Mauchline and Mr. Sluss, our engineers, will be on the property in a few days, to make the necessary surveys and plans to a proper opening of the mines, and location of plant. They will come as soon as possible; probably Tuesday, the 20, and before if they can. Mr. Hughes comes to see about the timber and mill. If mill can be rented,—a sawing upon terms satisfactory to us,—that will probably be done. If not, will probably buy a new mill, and put it in charge of our own ruler. Mr. Thompson and I intended to come down while here this trip, but are unxepectedly obliged to go West, and will have to defer our visit until later, some time in December. Yours, truly, Thos. H. Brewster.''

"New York, Nov. 16, 1894. Dr. M. H. Waldron, Fairfax, W. Va.—Dear Sir: Your letter of the 14th inst. received, and contents noted. The suggestion you make is certainly a very good one. We will give it immediate consideration, and will undoubtedly put the idea into execution immediately. Note your postscript about the cyclone, and would say that, so far as we are concerned, we are unterrified, and believe that the Democrats are simply down the cyclone hole, and will come up in time to make a Democratic president in '96. We are betting that way now, and will vote that way when the time comes. Yours, very truly, Thompson & Brewster.''

This is all the evidence touching the subject introduced by plaintiffs. The law on the subject is laid down in *Moore* v. *Harper*, 42 W. Va., 39, (24 S. E. 633), in these words: "Where a person, by his conduct, conversation, admission, or otherwise, allows himself to be held out as a member of a prospective firm, and thereby a third party is induced to credit such firm, such person, to the extent of liability thus incurred, is estopped from denying the existence of such firm." Also, in T. Pars. Partn. 104: "This liability because of holding out rests upon the doctrine of estoppel, because the defendant, having represented himself to be a partner, cannot afterwards, by showing the falsehood of the representations, defraud those who have acted upon them. It does not make him an actual partner. Therefore he is held liable only to one who knew of the holding out at the time he acted, and acted in reliance upon it." That is, the credit to the firm must have been induced by the reliance of the creditor on the parties alleged to have held themselves out as members thereof, and not alone to those who may be the real members of the firm. The contract sued on in this case is in these words: "W. R. Hughes & Co.: We are willing to let the railroad run where it is now surveyed, and release the amount of slack at 10c. royalty. In case if you don't go to work in 30 days, and continue until all the work is done for said Fairfax Coal & Coke Co., you pay five hundred dollars. If you don't do as above without recourse at law, and all contracts will be of no effect hereafter. Given under our hands this day and date, March 5th, 1895. M. H. Waldron. [Seal.] Hester A. Waldron. [Seal.] W. R. Hughes & Co., by Hughes. [Seal.] Witness: John B. Waldron." The five hundred dollars is an apparent forfeiture, penalty, or, as plaintiffs denominate it, liquidated damages for failure to "begin work in thirty days." There is no evidence even tending to show that this extension of thirty days' time was given to the firm of W. R. Hughes & Co., on the credit of the defendants in error, nor is there any evidence showing that they in any manner ever knew of, agreed to, or ratified such extension of time, and the forfeiture thereby imposed. It is settled law that the implied authority of a member to bind the firm does not embrace

the right to sign a sealed instrument, to confess a judgment, submit to arbitration, or to agree on a fixed penalty, forfeiture, or liquidated damages, as all such matters, being out of the ordinary transactions of commercial business, can only be made binding on the firm by special authority granted, or after ratification. 3 Minor, Inst. 712. If such a transaction as the present cannot be held binding on the regular members of the firm without special authority, much less can it be held binding on the irregular members without such special authority or after ratification. No such authority can be implied for the very reason that it is equivalent to a confession of judgment. Such powers are out of the ordinary usages and customs of mercantile law, and would enable one partner to bankrupt the firm in a manner not contemplated in the formation of ordinary partnerships, In T. Pars. Partn. p. 147, § 120, it is stated: "And if a contract be made by one partner in the name of the firm with a stranger, if the transaction is foreign to the usual course of dealing with the firm, this circumstance lays on the stranger the duty and responsibility of inquiring and ascertaining whether the partner has the authority of the firm." The evidence fails to connect the appellants in any way with the second contract, either by showing any previous authority or after-ratification in any manner. In this it is fatally defective, and the circuit court erred in not setting aside the verdict as contrary to the law and the evidence.

*Reversed.*