# Wheeling.

THE FARMER'S BANK OF VIRGINIA *et al. vs.* J. H. GETTINGER.

January Term, 1870.

1. The Farmer's Bank of Virginia, being a domestic corporation in Virginia, before the division, and having branches in the territory which became West Virginia, from the date of the division continued in law and in fact a domestic corporation of the latter State as effectually as it had been under the former State, and as such was liable to be sued, and was not liable to be proceeded against as a foreign corporation.

2. Where such an affidavit as the law requires to be made, upon which to predicate an attachment, is, in fact, made, the accidental omission of the clerk, before which it was made, to sign it at the time, is not sufficient to vitiate the attachment properly issued thereon.

3. Where a party is summoned as a garnishee to answer the amount of his indebtedness to a bank of circulation, he cannot offset that indebtedness with the notes of circulation of the bank acquired after the service of the summons on him, the lien of the creditor being fixed on the indebtedness existing at the time of the service. Nor does the provision of the statute requiring the bank to receive its notes in payment of debts due it, alter the case. But he is entitled to offset the notes of the bank held *bona fide* by him at the time of the service of the summons.

This case arose in Berkeley county, and the summons was returnable to April rules, 1866. The action was assumpsit. An affidavit appears in the record, dated March 14th, 1866, (not signed by any one, though the testimony of the clerk of the circuit court of Berkeley county proves that it was made by the plaintiff, before him), stating that the defendant, The Farmers' Bank of Virginia, was justly indebted to plaintiff in the sum of 2000 dollars; that there was present cause of action therefor; and that the bank and

its corporate authorities were non residents of the State, and had debts or estate due it within the county.

Upon this an attachment issued, dated March 15th, 1866, and was served on William T. Snodgrass, as trustee, &c., as garnishee.

Upon the first calling of the cause, at what date does not appear in the record, the defendant moved the court to dismiss the summons and send the case back to rules, upon the grounds that the summons could not be sued out in Berkeley county, and because the summons had not been served on the defendant according to law, it having been proceeded against as a non resident or foreign corporation by attachment and order of publication, when it was a corporation holding a charter under the constitution and laws of West Virginia. This motion was overruled, the court holding it to be a foreign corporation, and that the process was properly served by order of publication, and that the persons named as owing debts to it were properly summoned as garnishees; to which the defendant excepted.

John M. Godden and Samuel C. Robinson, subsequently, at what precise time the record is also silent, filed their petition, alleging that it was a corporation of this State, and could not be proceeded against by foreign attachment; that by a law passed by the legislature of Virginia, in February, 1866, the bank was authorized to make an assignment for the protection and benefit of all of its creditors, which it shortly afterwards did, and before the proceedings of the plaintiff were commenced, to the petitioners as trustees, &c.

Snodgrass answered the summons, that he had in his possession, at the date of the service of the attachment on him, 246 dollars in notes of circulation on the bank, and that he owed it as trustee of one H. N. Tabb, a gross sum of 1,598 dollars and 77 cents; that at, and prior to, the time of the service of the attachment on him, he had an arrangement with the cashier of the Farmers' Bank at Winchester, Virginia, to receive the circulating notes of the bank in discharge of notes due to it by Tabb, and that such was its

usual course of business; that at the time of the service of the attachment, and when this understanding was had, the bank had made no assignment and had not gone into liquidation; that by the proceedings of the plaintiff, Gettinger, he had been unable to complete this arrangement, but claimed the right and privilege of doing so now, and tendered the sum due from him as trustee, to the court, in the circulating notes of The Farmers' Bank of Virginia.

The court gave judgment, at what time does not appear by the record, against Snodgrass, for the whole sum due the bank, less the 246 dollars in his hands at the date of the service of the attachment, to be paid in current par funds, and the 246 dollars to be paid in the circulating notes of the bank.

Snodgrass excepted to the judgment.

It does not appear from the record where the Farmers' Bank of Virginia was located. There was no evidence certified in the record except that of the clerk of the circuit court of Berkeley county, on the question of the making of the affidavit for the attachment.

The opinion of the President furnishes some statements as to the location of the bank.

The defendants brought the case here.

Hon. E. B. Hall was judge of the circuit court of Berkeley county, on the hearing of the defendant's motion to dismiss the summons, and Hon. Jos. A. Chapline was presiding when the judgment was had against Snodgrass.

*Faulkner* for the plaintiffs in error.
*Stanton & Allison* for the defendant in error.

BROWN, *President.*

There are several questions arising for determination in this case. The first is, whether the Farmers' Bank is a domestic corporation of this State liable to be sued as such, or a foreign corporation and liable to be proceeded against

as a non resident, by attachment. This bank was an old chartered institution under the laws of Virginia, long before the formation of the State of West Virginia, having the "Mother Bank," as it is commonly termed, located at Richmond, and branches located at other points, and among them, one at Lewisburg, in the county of Greenbrier, and one at Charlestown, in the county of Jefferson; each of these branches was as perfect a bank in itself as the "Mother Bank," or any other bank corporation, having its officers and directory; its banking house and capital stock and banking business, organized and conducted under its charter, with charter rights and privileges. Such it was under the laws of Virginia before the separation. Is it less so now? By the 8th section of the XIth article of the constitution, it is provided that, "such parts of the common law and the laws of the State of Virginia, when this constitution goes into operation, and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the legislature." This, then, continues the charter, with all its rights and privileges, of the Farmers' Bank, with its branches in this State, in full force here, unless the same be repugnant to the constitution. No such repugnancy has been pointed out; none is perceived. I am at a loss to see how one bank, any more than another, having chartered rights, a local habitation and a name, and by law and in fact located in this State, can any more or any less be a domestic corporation. No one ever doubted that the Merchants' and Mechanics' Bank of Wheeling, with its branches, or the Northwestern Bank of Wheeling, with its branches, one of which is located at Jeffersonville, in the county of Tazewell, in the State of Virginia, are domestic corporations in every sense of the term; and yet they differ in no essential particular from the Farmers' Bank and branches. The one has what is called the "Mother Bank" at Richmond, and branches in different counties of the old and new States. The others have the "Mother Bank" at Wheeling, and branches in different counties of both States; all located

respectively by law.   The charter rights and privileges, and the organization under the law are no more valid or sacred at the one place than the other.   The fact that this and other banks similarly situated, may continue to be Virginia corporations, is wholly immaterial, and is no more repugnant to the fact, that it and others so situated are also domestic corporations of this State, than that the Baltimore and Ohio railroad, and the Hempfield railroad are domestic corporations of this State by virtue of the laws of Virginia in force before the separation, notwithstanding both of said companies are also foreign corporations, the one of the State of Maryland, and the other of the State of Pennsylvania. *Goshorn* vs. *Supervisors of Ohio County*, 1 W. V. R., 308; *Ott* vs. *McHenry*, 2 W. V. R., 73.   The Farmers' Bank being a domestic corporation in Virginia before the division, and having branches in the territory which became West Virginia, from the date of division, continued in law and in fact a domestic corporation of the new State as effectually as it had been under the old; and as such, was liable to be sued, and was not liable to be proceeded against as a foreign corporation.

The next question raised is, as to the validity of an attachment based on an affidavit without a *jurat*, signed by the officer who administered the oath.   The evidence all taken together, I think, shows satisfactorily that the affidavit was written in due form, and actually sworn to at the time by the affiant, and the attachment then issued by the officer, based on the affidavit, and reciting the fact of its having been made, but by some inadvertence or oversight the officer administering the oath omitted to sign the certificate of the affidavit; and it is now claimed that the attachment should be quashed as illegal for want of an affidavit.   I think that the facts show that there was just such affidavit as the law required, and that the accidental omission of the clerk to sign it at the time could not vitiate when the fact was made to appear.

The next question is, whether it was competent for the

defendant, Snodgrass, who was a debtor of the bank, and in whose hands the debt had been attached by the plaintiff, Gettinger, a creditor of the bank, to buy up the depreciated bank paper of the bank and set it off against the debt due from himself, and which had been attached as aforesaid, and that too, after the attachment had been served on him; that is to say, upon the hypothesis that the attachment was valid. Upon the service of the attachment on the garnishee debtor, the debt became fixed, and the attachment creditor acquired a lien on the debt in the hands of the garnishee, which could not be discharged but by payment or satisfaction, if the attachment be sustained. It could not be affected by after acquired set-offs, but would be subject to the just and equitable set-offs which the garnishee might *bona fide* have at the time of the service of the attachment upon him. The bank notes of the Farmers' Bank, which the garnishee held *bona fide* at the date of the service of the attachment upon him, was a good set-off against the claim of the attaching creditor of the bank; but the notes of the bank or other set-offs acquired by the garnishee after service of the attachment upon him, and for the purpose of being so set off, could not be so applied as against the attaching creditor. Nor does the provision of the statute requiring it to receive its notes in payment of debts due it, alter the case as to the attachment, if valid otherwise. The same principle was urged under similar circumstances in the case of *Howsum* vs. *Rodgers*, 40 Penna., 190, but without avail. The case of *Augusta Bank* vs. *Howard*, 13 Mass., 235, was determined on common law principles. In the case of *Clarke* vs. *Hawkins*, 5 R. I., 219, the principle governing set-offs by a debtor of a decedents estate, was applied to a bank case very like the present. Though influenced by local statutes, the principles applicable were similar, in the case of *Deen* v. *Phelps*, 34 Barb., 224; *Brower* v. *Harbecke*, 5 Seld., 589; *McLaren* v. *Pennington*, 1 Paige, 102; *American Bank* v. *Wall*, 56 Maine.

From the foregoing views, I conclude that the court erred

in refusing to remand the cause to rules, and also in holding the said bank a foreign and not a domestic corporation, and that the same could be proceeded against, as such, by foreign attachment.

I think, therefore, that the judgment of the circuit court should be reversed, the attachment quashed, unless other cause be shown for its continuance before the circuit court, and the cause remanded to the circuit court of Berkeley, to be further proceeded with in conformity with the principles above indicated. And the plaintiff in error, Snodgrass, being the party substantially prevailing, is entitled to his costs in this court.

Judges Maxwell and Berkshire concurred in the conclusion.

JUDGMENT REVERSED.