# CHARLESTON.

ROBERTS v. BURNS *et al.*

Decided April 14, 1900.

1. ATTACHMENT—*Affidavit—Sufficiency.*
   An affidavit for an attachment which contains the following clause: "Affiant further says that he believes that some one or more of the following grounds exist for an attachment against the property of defendant B.,"—and then proceeds to state five different grounds, is too indefinite and insufficient. (p. 97).

2. ATTACHMENT—*Facts to be Stated.*
   A statement of material facts in an affidavit for attachment must be certain and definite in a legal point of view, so as to inform those entitled to defend the attachment what particular facts they must repel, and the facts thus stated must be such as to show the grounds of attachment to which they relate. (p. 97).

3. AFFIDAVIT—*Facts Alleged—Disjunctive.*
   An affidavit alleging one or the other of two or more distinct grounds for an attachment would be bad, because of the impossibility of determining which is relied on to sustain the attachment. (p. 98).

Appeal from Circuit Court, Wood County.

Action by George W. Roberts against Burns Bros. and others. Judgment for plaintiff, and defendants Burns Bros. appeal.

*Reversed.*

VAN WINKLE & AMBLER and MASON G. AMBLER, for appellants.

V. B. ARCHER, for appellee.

ENGLISH, JUDGE:

On the 1st day of June, 1898, George W. Roberts filed his affidavit and bond for an attachment, returnable to August term, 1898, against David Burns and Gideon Burns, partners doing business under the name of Burns Bros., and others, in the circuit court of Wood County, and sued out an order of attachment against the estate of said Burns Bros. to pay the sum of two

thousand dollars and costs. The order of attachment was levied upon certain real estate in Wirt County, and certain personal property belonging to said defendants. At the July rules, 1898, the plaintiff filed his bill in the cause, in which he alleged that the defendants Burns Bros., who had been in the timber and manufacturing lumber business on the Little Kanawha river, had become indebted to him for supplies furnished them, and by taking up their orders, he took from them, for their accommodation, four notes, for five hundred dollars each, dated, respectively, March 17, March 28, April 28, and May 10, 1898, all of which notes were negotiable, and payable ninety days after their dates at the Citizens' National Bank of West Virginia at Parkersburg, which notes were discounted at that bank, and none of them were due at the time said suit was instituted and said order of attachment sued out. The plaintiff, in his affidavit, describes said notes; states that they are not due, and when they will become due, and that he believes some one or more of the following grounds exist for an attachment against the property of said Burns Bros.: That they are about to remove their property, or the proceeds of its sale, or a material part of said property or the proceeds, out of this State, so that process of execution or judgment in such suit, when it is obtained, will be unavailing; that said defendants are converting or are about to convert their property, or a material part thereof, into money or securities, with the intent to defraud their creditors; that said defendants have assigned or disposed of their property, or a material part thereof, or are about to do so, with intent to defraud their creditors; that the said defendants have property or rights in action which they conceal; and that they fraudulently contracted the debt or incurred the liability for which the plaintiff's action was about to be brought. The material facts relied on by plaintiff to show the existence of the grounds upon which his application for attachment was based are stated briefly as follows: That defendants had been engaged in the lumber business at Elizabeth, Wirt County, on the Little Kanawha river. That they also had an interest in a certain mill on the Great Kanawha, below Charleston. That the company was called the Burns Lumber Company. That, about the time plaintiff's account was opened, one of the defendants informed him that Burns Bros. were furnishing timber and supplies to said Burns Lumber Company, and creating liabilities, by reason of their operations on the Little

Kanawha river; stating to plaintiff that their reasons for not paying his debt and reducing their liabilities were that they were using their means to furnish supplies to said Burns Lumber Company, and that they had sufficient property there to meet their obligations arising out of the transaction on the Little Kanawha, when such statements were not true, but, on the contrary, said Burns Bros. were liable in a large sum of money to said Burns Lumber Company. That said Burns Lumber Company was insolvent, and had made an assignment for the benefit of its creditors. That the Burns Lumber Company or some of its agents, had instituted suit in the United States Circuit Court against said Burns Bros., claiming a large sum of money (something over thirty thousand dollars) as liability against Burns Bros. growing out of their transactions with the parties owning or controlling said Burns Lumber Company. That credit was given by the plaintiff to said defendants on the strength of their statements that they had large interests in the business of the Burns Lumber Company,—large enough to pay the debts of the firm of Burns Bros., including that of the plaintiff. That in the autumn of 1896 W. E. Fleming, a trusted agent of Burns Bros., made false statements to plaintiff as to the timber trees owned by them, claiming they were worth one hundred thousand dollars, and by reason of such statement credit was extended to defendants. That said Burns Bros. have sold their timber on the Little Kanawha river, which they intended to manufacture into lumber, to the Parkersburg Mill Company, which timber would amount to fifteen or twenty thousand dollars, out of which they paid plaintiff a note of only five hundred dollars, and have received the entire proceeds of said timber sale. That credit was extended to them upon the faith that they would manufacture said lumber at their mill at Elizabeth, and that, by false representations and statements of said defendants that they had ample property and means to pay their debts, plaintiff was led to credit said defendants. The plaintiff, in his bill, also sets forth the same facts, in substance, as were stated as facts relied on in the affidavit to support the order of attachment. The defendants Burns Bros. demurred to the plaintiff's bill, which demurrer was overruled, and thereupon they filed their answer, denying the material allegations of the bill. On the 15th of August, 1898; the defendants, by their counsel, moved the court to quash the attachment in this cause, and to annul and set aside the order of

attachment issued herein, which motion, being considered by the court, was overruled, and the defendants excepted; and thereupon the Citizens' National Bank appeared by counsel, and moved to be admitted a party defendant to this suit, which motion was granted, and leave given said bank to answer. The defendants thereupon applied for and obtained this appeal; claiming that it was error in the court to refuse to quash said attachment, to sustain an attachment brought by an indorser contingently liable before maturity on commercial paper held and owned by a third party, to hold that the material facts stated were sufficient to support the grounds alleged, and to permit the plaintiff to maintain the attachment and suit based thereon.

Counsel for the appellants insist, first, that because the claim sued for was not due, and was not owned by or owed to the plaintiff, he could not sustain this attachment. It is true that the claims upon which this suit was predicated were not due at the time the attachment was sued out, and that they had been indorsed by the plaintiff, George W. Roberts, to the Citizens National Bank; yet can we say that for these reasons said Roberts was precluded from maintaining an attachment in equity, based upon proper affidavit, against the makers of said notes? We cannot say that either Roberts or the Second National Bank were entitled to recover the proceeds of said four notes on the day this attachment proceeding was instituted, but our statute (section 1, chapter 106, of the Code) provides that an attachment may be sued out in a court of equity for a debt or claim, legal or equitable, whether the same be due or not, upon any of the grounds aforesaid, but the affidavit, in case the claim or debt be not due, must show when it will become due.

It is further insisted by counsel for the appellants that the plaintiff, Roberts, has no right to recover the money, and, if he succeeded in getting it, there would be no assurance that he would ever discharge the notes. In response to this position, attention is called to the fact that at the time of sueing out said order of attachment the plaintiff executed a bond, with approval security, in the penalty of four thousand dollars, conditioned, among other things, to pay all costs and damages which might be awarded against him, or sustained by any person, by reason of suing out the said order of attachment, which bond would protect said bank in the event said Roberts received and misapplied the proceeds of the property levied on under said order of attach-

ment, and it could not be recovered from said Roberts. This, however, is a chancery proceeding, and, if said bank is not already a party thereto, it can be made such, and its interests in the premises fully protected. The proceeding by way of attachment is ancillary in its character. The statute provides that "when any action at law or suit in equity is about to be or is instituted for the recovery of any claim or debt arising out of contract," etc., "the plaintiff may have an order of attachment, etc., * * * and such attachment may be sued out in a court of inquiry for a debt or claim, legal or equitable, whether the same be due or not." Code, chapter 106, section 1. Where the suit is in equity the plaintiff may, by the pleadings, aid in the proper disposition of the property levied under the order of attachment, if proper allegations are made in the bill. In the case at bar the plaintiff seems to have entirely overlooked the rights of the Second National Bank to the claims sued on, and prays that he may have a decree against the defendants for the sum of two thousand dollars and costs, and that the land and property attached may be decreed to be sold, and the proceeds appplied in payment of plaintiff's claim and costs. It also appears that, though a portion of said notes have matured since the institution of said suit, none of them have been paid, so far as appears, and there is nothing in the bill to indicate a desire on the part of the plaintiff that said bank should be decreed any portion of said proceeds.

Returning to the question raised as to the right of the plaintiff to sue out this order of attachment before the claims sued on are due, we find it held in *Altmeyer* v. *Caulfield,* 37 W. Va. 847, (17 S. E. 409), that "an attachment can be sued out in equity against an abscounding debtor by the accommodation maker of a negotiable note not yet due, although such maker has not yet paid such note, as he is absolutely bound to do so when it becomes due." We cannot distinguish that case, in principle, from the one under consideration. Roberts was payee in the notes, and in discounting them became the indorser to the bank, and liable to pay the same in the event the makers failed so to do, and had to file a bill in the nature of a bill *quia timet* to protect himself and the bank to which he had indorsed the paper. This Court has uniformly held that the proceeding by way of attachment is a creature of the statute, and in derogation of the common law, and, to be made effective, must be strictly pursued. The province of the

attachment is to seize and secure the property of the debtor until it can be properly applied in satisfaction of his indebtedness. It is always regarded as a harsh remedy, and consequently the proceedings upon which it is based are closely scrutinized, and confined within the letter of the statute. Can we say that the affidavit filed for an attachment by the plaintiff in this case is sufficient? Affiant states that he believes that five different grounds exist for an attachment. By prefacing this statement with the words "some one or more of the following grounds," is not the effect precisely the same as if each ground stated was prefixed by the word "or"? Some one or more of the grounds form the base of the application for an attachment, but which one, or how many, does not appear. 1 Shinn, Attachm. s. 146, says: "An averment that the debtor is about removing or is so concealing his effects as to defeat the creditor, or that the defendant is about to convert his property, or a part thereof, into money, for the purpose of placing it beyond the reach of creditors, is not sufficient; being in the alternative." See *Dintruff* v. *Tuthill,* 62 Hun. N. Y. 591, 17 N. Y. Supp. 556; *Cronin* v. *Crooks,* 143 N. Y. 352, 38 N. E. 268; Drake, Attachm. (6th Ed.) s. 101*a.* While the affidavit may state as many grounds of attachment as the statute allows, it will be defective if it states two or more of them disjunctively. 3 Enc. Pl. & Prac. p. 22. So, in the case of *Sandheger* v. *Hosey,* 26 W. Va. 223, SNYDER. JUDGE, speaking for the Court, said: "An affidavit alleging one or the other of two or more distinct grounds would be bad, because of the impossibility of determining which is relied on to sustain the attachment." Nothing could be more indefinite than the expression used in this case: "Affiant further says that he believes that some one or more of the following grounds exist," etc.

We next come to consider the question raised as to whether the material facts relied on in said affidavit are such as the law requires, and sufficient to sustain the truth of the grounds relied on to obtain the attachment. It may be well to examine the rule which has been applied to attachments, with reference to this portion of the affidavit, by this Court. In *Goodman* v. *Henry,* 42 W. Va. 527, (26 S. E. 528), 35 L. R. A. 847, it is held that "a statement of material facts in an affidavit for attachment must be certain and definite, in a legal point of view, so as to inform those entitled to defend the attachment what particular facts they must repel." See, also, *Hale* v. *Donahue,* 25 W. Va. 414.

After stating that Burns Bros. had been in the lumber business in Wirt County, and also interested in the mill known as the Burns Lumber Company, on the Great Kanawha, he states that some time during last autumn (the affidavit bears date June 1, 1898), at the time plaintiff's account was opened, and in a conversation plaintiff had with one of the defendants (which one of eight is not mentioned), plaintiff was informed that Burns Bros. were furnishing timber and supplies to the Burns Lumber Company, and creating liabilities, by reason of their operations on the Little Kanawha; that the reason they did not pay his debt was that they were using their means to furnish supplies to said lumber company; that they had sufficient property there to meet their obligations arising out of the transactions on the Little Kanawha,—which statements were not true. Now, this conversation, even if had with Burns Bros., or either of them, applied to debts then existing, which they owed plaintiff, because they assigned this excuse for not paying plaintiff's claim against them, and could not be used to support the ground that they fraudulently contracted the account then opened; and that is the only ground to which it could have the most remote application. As to affiant's statement that credit was extended Burns Bros. by reason of this conversation, there is nothing in the affidavit that asserts that the claim sued on was created in consequence thereof. As to the false statement attributed to W. E. Fleming as made in the fall of 1896, there is nothing in the affidavit that shows that Burns Bros. had any knowledge that such statement was made, or that Fleming had any authority from them to make the same. Affiant further relies on the statement that Burns Bros. sold their timber in Parkersburg for twenty thousand dollars, instead of manufacturing it at Elizabeth, on the Little Kanawha. This they had a perfect right to do, if, in their judgment, it would yield them more money; but, says affiant, they only paid him five hundred dollars out of the proceeds. No promise is alleged that they would do otherwise, and, while this portion of the affidavit may be true, it constitutes no ground for an attachment. See *Delaplain* v. *Armstrong*, 21 W. Va. 215, in which the defendants were disposing of their property without applying the proceeds to the payment of plaintiff's debt as they promised; and JOHNSON, J., speaking for the Court, says: "This statement amounts to an averment that the defendants have not paid the plaintiff's debt, as they promised to do. This is a common com-

plaint.  But it is certainly not of the character which authorizes an attachment."  The affidavit shows that Burns Bros. were not alone indebted to plaintiff, and in paying him five hundred dollars they may have acted fairly and honestly among their creditors.  This statement of material facts in the affidavit does not, in my view, conform to the standard prescribed in *Goodman* v. *Henry,* 42 W. Va.

In my view of the case presented by the record, the circuit court erred in overruling the motion to quash the attachment sued out in this cause. The affidavit being insufficient, the attachment should have been quashed; and the plaintiff, by his bill, not having shown himself entitled to the proceeds of the notes sued on, but, on the contrary, that they were the property of the Second National Bank of Parkersburg, and equity only having taken jurisdiction by reason of the attachment, the defendants' demurrer should have been sustained.  The decree is reversed, and the bill dismissed.

*Reversed.*