JOHNSON QUEEN

*v.*

MAN HOSPITAL, *Inc.*

(No. 9741)

Submitted January 9, 1946. Decided March 5, 1946.

576

*George S. Wallace*, for plaintiff in error.

*Mark T. Valentine*, for defendant in error.

HAYMOND, JUDGE:

This proceeding by attachment, in which the plaintiff obtained a lien upon personal property of the defendant, for rent to accrue during the period of one year from September 1, 1944, under a written lease between the parties upon improved real estate in the town of Man, Logan County, West Virginia, owned by the plaintiff and, on August 9, 1944, occupied and used by the defendant as a hospital, was instituted before a justice of the peace of that county on that day, under Section 17, Article 6, Chapter 37 of the Code, 1931.

That section prescribes the conditions and details the procedure by which a plaintiff may obtain an attachment for rent against the personal estate of any person liable for such rent, provides that a defendant may make defense in the same manner and to the same extent as in other cases of attachment, and specifies the form of the attachment order that may be issued by a justice of the peace, which, by the terms of the statute and according to the amount of the rent claimed, is returnable to the justice or to the Circuit Court. It is pertinent to observe that the remedy by attachment created by this section is special in character and differs in several material particulars from the ordinary proceeding by attachment provided for in Sections 1 and 2, Article 7, Chapter 38 of the Code, though numerous statutory provisions governing the ordinary proceeding are, by the

terms of the statute, Code, 37-6-17, made applicable to this special attachment proceeding for the collection of rent.

The plaintiff proceeded under this statute and followed the procedure outlined by its terms except one requirement as to the execution of the bond provided for in Section 8, Article 7, Chapter 38 of the Code. No affidavit of the plaintiff, or other reliable person, stating the estimated value of the property to be attached, as specified in that section, was filed by the plaintiff, but he executed, at the time the attachment was sued out, bond with good security, approved by the justice, in the penalty of $9,000.00, with the requisite condition, and the justice issued the order of attachment in the form prescribed by Section 17, Article 6, Chapter 37 of the Code.

The order recited the filing with the justice of the affidavit and the bond as provided by law and required the officer to whom it should come to attach and take into his possession the personal estate of the defendant sufficient to pay the sum of $4,500.00 and costs, and to make return of his proceedings under it to the next regular term of the Circuit Court of Logan County. On August 17, 1944, a constable of the county, to whom the order was delivered, levied upon and took into his possession a large quantity of the personal property of the defendant located upon the leased premises; and on September 2, 1944, the defendant, having removed from the property, executed a bond, with surety in the penalty of $4,600.00, conditioned to perform and satisfy any judgment or decree that may be entered against it by the Circuit Court upon the attachment, and regained possession of the attached personal estate as provided by Section 20, Article 7, Chapter 38 of the Code.

On September 9, 1944, the defendant filed its notice of recoupment and its motion to quash the attachment in the Clerk's office. Two days later, on September 11, 1944, at the first regular term after the attachment was issued, the motion to quash was filed in court by order

duly entered in the case. Later in the same term of court, on October 5, 1944, the defendant filed its amended motion to quash, in which, among other grounds, it urged the court to quash the attachment upon the specific ground that no affidavit stating the estimated value of the property to be attached, made by the plaintiff or some reliable person for him, had been filed before the justice at the time the attachment was issued as required by statute. Code, 38-7-8. The court overruled the amended motion to quash, the defendant filed its plea of the general issue and its notice of recoupment, and, issue being joined, the case was tried to a jury. The jury, having failed to agree upon a verdict, was discharged, and the case was continued to the January, 1945, term of the court. At that term the case was again tried upon the same pleadings and the supplemental notice of recoupment filed by the defendant, and the jury returned a verdict for the plaintiff for $4,500.00, upon which the court, on February 7, 1945, entered the judgment which the defendant seeks to reverse in this Court.

The basic controversy between the parties to this action involves certain provisions of a written lease entered into by them on October 12, 1942, by which the plaintiff, the owner, demised the premises to the defendant for use as a hospital for a period of ten years from June 1, 1942, at an adjusted monthly rental which was fixed, as of December 1, 1942, at $375.00, payable in advance on the first day of each month for the residue of the term. Before the written lease was executed, and prior to June 1, 1942, the plaintiff had remodeled the premises to make them suitable for use as a hospital by the defendant, and the defendant entered and took possession on or about that date, under a verbal arrangement between the parties which continued until the written lease was entered into on October 12, 1942. The pertinent provisions, concerning which the factual differences arise in this proceeding, relate to repairs to the building and heat and water to be furnished, and are embodied in paragraphs two and three of the lease.

These paragraphs contain certain express provisions. Their substance is summarized, by the use of the terms employed by the parties to the lease, in the following sentences. The lessor shall keep the leased building in good and reasonable repair, but he shall not be required to make repairs necessitated by the negligence of the lessee, its agents or employees, or any other repairs that may be necessary, unless reasonable written notice of such repairs is furnished him by the lessee; and the lessee shall not remodel or make any changes to the interior of the leased premises without first obtaining the consent of the lessor. The lessee, without charge, shall have the right to connect with the private water line of the lessor to obtain water for use by the lessee upon the premises, to use the furnace in the basement of the nearby residence of the lessor for the purpose of heating the leased premises when heat is required in its operation of the hospital, and to use the coal of the lessor to operate the furnace. The lessor shall not be required to furnish an adequate supply of water or adequate heat for the use of the hospital or otherwise, and shall simply make available for the use of the lessee such amounts of water and such heating facilities as the lessee may be able to obtain from the water system and the heating system as they were then owned and maintained by the lessor. The lessor shall not be liable to the lessee for any failure of the water or heating systems caused by shortage of water or coal, or for damage to or destruction of such systems, or for any other similar cause. The lessee shall have the right to access to the furnace by means of a designated entrance to the basement of the nearby residence of the lessor to stoke and operate the furnace. The parties agree that the water and heating systems were constructed primarily to supply water and heat to the adjoining residence and the other dwelling houses of the lessor, and that, in the event of damage to or destruction of the water system or the heating system, the lessor is not obligated to repair them immediately. In this connection, the only obligation of the lessor is that

when either of such systems shall be repaired for furnishing water or heat to the residence and the other dwelling houses of the lessor, he shall permit the lessee to use the facilities to obtain water and heat from such systems to the same extent as it was entitled to do so before such repairs were made. If the lessee shall be unable to obtain adequate water or heat from the systems of the lessor, it shall have the right, at its own expense, to obtain water from the public water system and to install and operate a separate heating system upon the leased premises. Any change in the plumbing occasioned by such action shall be made in workmanlike manner by plumbers and workers acceptable to the lessor.

Certain adjustments of the terms of the lease were subsequently agreed to between the parties in November, 1943, but in the main they merely clarified, and did not materially alter, the rights and the duties created by the lease in its original form. For that reason they need not here be detailed or discussed.

During the summer of 1942 the parties appear to have been satisfied with these arrangements, but in the winters of 1942, 1943, and 1944, the hospital did not receive adequate heat. The defendant was dissatisfied with the service provided by the water system and the plumbing, and disagreements resulted. The defendant contended that this situation was due to the failure of the plaintiff to perform his obligations under the above mentioned provisions of the lease. This the plaintiff denied. Finally, in August, 1944, the defendant, by notice published in a local newspaper, which came to the attention of the plaintiff, and by conversation between its representative and the son of the plaintiff, informed him that it intended to terminate the lease and remove from the premises. On August 1, 1944, the defendant paid the rent accruing for that month, and, several days later, it moved out of the building. On August 9, 1944, the plaintiff instituted this proceeding.

By its assignments of error the defendant contends:

(1) That this proceeding by attachment is void for the reason that no affidavit of the plaintiff, or some other reliable person, stating the estimated value of the property to be attached, was filed by the plaintiff before the justice of the peace; (2) that the attachment is for more rent than will be payable within one year; and (3) that the trial court should have given Instruction Number One requested by the defendant. Upon these grounds the defendant assails the judgment and insists that it should be reversed by this Court.

Attachment is the creature of statute. The remedy by attachment being of a summary nature and capable of oppressive use, the statute authorizing it, being in derogation of the common law, will be strictly construed by the courts. The decisions of this Court uniformly so hold. *Lefevre* v. *Lefevre,* 124 W. Va. 105, 19 S. E. 2d 444; *DeLung* v. *Baer, Judge,* 118 W. Va. 147, 189 S. E. 94; *Mabie* v. *Moore,* 75 W. Va. 761, 84 S. E. 788; *Altmeyer* v. *Caulfield,* 37 W. Va. 847, 17 S. E. 409; *Cosner* v. *Smith,* 36 W. Va. 788, 15 S. E. 977; *Delaplain* v. *Armstrong,* 21 W. Va. 211.

But this requirement of strict construction of such statutes, which is adhered to by this Court, does not render proceedings by attachment subject to dissolution because of technical defects and unsubstantial departures from the words of the statutes. 4 Am. Jur., Attachment and Garnishment, Section 633; 7 C. J. S., Attachment, Section 141. Substantial compliance with the provisions of the statute is sufficient to sustain an attachment. *Hatfield* v. *Blount,* 86 W. Va. 411, 103 S. E. 203; *Duty* v. *Sprinkle,* 64 W. Va. 39, 42, 60 S. E. 882; *Lewis* v. *Bragg,* 47 W. Va. 707, 35 S. E. 943; *Kesler* v. *Lapham,* 46 W. Va. 293, 33 S. E. 289; *Reed* v. *McCloud,* 38 W. Va. 701, 705, 18 S. E. 924; *Andrews* v. *Mundy,* 36 W. Va. 22, 14 S. E. 414; *Ruhl* v. *Rogers,* 29 W. Va. 779, 2 S. E. 798; *Sandheger* v. *Hosey,* 26 W. Va. 221; *Gutman* v. *Virginia Iron Co.,* 5 W. Va. 22; *Farmer's Bank* v. *Gettinger,* 4 W. Va. 305; Attachment, 6 C. J. 152, Note 92; 7 C. J. S., Attachment, Section 141. It is true that, in a number

of the above cited cases, the Court held the affidavit in question to be fatally defective; but in so doing, it gave recognition to the principle that substantial compliance with the requirements of the statute is sufficient to sustain a proceeding by attachment. Here the only irregularity or defect is the omission of the affidavit mentioned in the statute, Code, 38-7-8, in connection with the giving of the bond required by the statute by virtue of which the attachment was issued. Code, 37-6-17. The execution of the bond, not the filing of the affidavit, which was preliminary to that act, is the substantial requirement of the statute. At the time the attachment order was issued, the plaintiff gave the designated bond with approved security, in a penalty which does not appear, or is not claimed by the defendant, to be insufficient in amount or less than double the estimated value of the property to be attached, as mentioned in the statute, and which bond is conditioned according to the terms of the statute. It is true that the statute speaks of the affidavit as preceding the giving of the bond; but it is the actual execution of the bond, not the filing of the preliminary affidavit, which constitutes the essential requirement of the statute, and that requirement the plaintiff substantially complied with and performed. By the giving of a proper bond, the preliminary requirement of the making of the affidavit, for all practical purposes, has been satisfied. The situation which here exists is entirely different from that which appears in numerous decisions of this Court in which attachments have been held to be invalid by reason of the failure to file any affidavit or because the affidavit filed was defective. In those cases the affidavit was essential, and constituted the jurisdictional basis of the proceeding. When such an affidavit is insufficient and does not substantially comply with the statutory requirements, the attachment and all subsequent proceedings, orders, and judgments based upon it are void and of no effect. 7 C. J. S., Attachment, Section 104. The defect which here appears, however, is not of that character and does not affect the validity of this proceeding.

It is significant that there is no contention by the defendant that the bond given by the plaintiff, without the preliminary affidavit, is in any wise insufficient, except for the absence of the affidavit, or that the penalty of $9,000.00 is inadequate or is in fact in an amount less than double the value of the property attached. At no time has it been shown, or attempted to be shown, that the bond, as given by the plaintiff, has not afforded the defendant all the protection which the statute undertakes to provide.

But even if the omission of the affidavit in connection with the execution of the attachment bond had been more serious in character than an unsubstantial defect, its adverse effect was cured by the action of the defendant in executing the bond, with condition to perform the judgment of the court, which the defendant gave on September 2, 1944, without taking any exception to the bond given by the plaintiff, and before it entered its appearance in the proceeding and filed its motion to quash the attachment affidavit and the attachment in court on September 11, 1944; and by its failure to except to the sufficiency of the penalty of the bond executed by the plaintiff by filing its petition in the Circuit Court in the manner provided by the statute, Code, 38-7-11.

Code, 38-7-20, expressly states that the defendant, in any attachment, may release from the attachment the whole of the estate attached; by giving bond with condition to perform the judgment or the decree of the court. This the defendant did on September 2, 1944.

In *Home Distilling Company* v. *Himmel*, 74 W. Va. 756, 82 S. E. 1094, this Court, in discussing the difference in effect between the forthcoming bond and the performance bond, mentioned in the statute, though not deciding the point, used language which indicates that the execution of the latter type of bond would operate as a waiver of defects, such as want of the proper affidavits, in attachment proceedings. In *Roach* v. *Blessing*, 73 W. Va. 319, 80 S. E. 453, this Court held that the purpose of

such bond is to release from the attachment the whole of the estate attached and that the execution of the bond produces this effect. In the later case of *Perkins* v. *Friedberg*, 90 W. Va. 185, 110 S. E. 618, in which the sufficiency of an affidavit for attachment was called in question, this language appears in the opinion: "We do not think it necessary to inspect the affidavit nor to pass upon its sufficiency. By giving bond to answer the judgment or decree of the court, the defects in the affidavit, if any, were waived. The motion to quash came too late. The affidavit had served its purpose, and the bond took the place of the attached property. *Danser* v. *Mallonee*, 77 W. Va. 26; *Franklin* v. *T. H. Lilly Lumber Co.*, 66 W. Va. 164."

·Code, 38-7-11, provides that any defendant, in an attachment proceeding, who shall consider the bond required of the plaintiff and given by him not to be proper in form, or the penalty or the security to be insufficient, may apply at once, by petition to the court, or the judge in vacation, and shall be permitted to except to such bond on any or all the foregoing grounds, and, if any of the exceptions be sustained, the attached property shall be returned to the person from whom it was taken by the officer and the attachment shall be quashed, unless the plaintiff shall, within such time as the court shall prescribe, give a proper bond, in a sufficient penalty, and with surety sufficient, all of which are to be approved by the court or the judge hearing the exceptions. By this provision of the statute the defendant was given a plain and an expeditious method of attacking the sufficiency of the penalty of the attachment bond because of the absence of the preliminary affidavit as to the estimated value of the property to be attached. Though the statute specifically made available to the defendant the method of meeting the defect of which it complains, that method was not invoked by the defendant. . Instead it filed its motion and amended motion to quash. The defenses to proceedings by attachment, and the proceedings themselves, are statutory; and the mode of defense prescribed

by the statute must be strictly pursued. *Shenandoah Valley National Bank* v. *Hiett*, 121 W. Va. 454, 6 S. E. 2d 769; *Stevens* v. *Brown*, 20 W. Va. 450.

The only method provided for excepting to the form, the penalty, or the security of the attachment bond is that specified by the statute. Code, 38-7-11. It afforded effective means and timely opportunity for compelling the plaintiff to file a preliminary affidavit, informing the court of the insufficiency of the penalty of the bond, if such there was, and, upon such showing, requiring him, by order of court, under penalty of quashing the attachment, to give a proper bond. The defendant, not having so proceeded, and not having questioned the form, or the sufficiency of the penalty or the security, of the bond, can not otherwise take advantage of the defect which resulted from the failure of the plaintiff to file the preliminary affidavit mentioned in the statute.

It is true that another section of the statute, Code, 38-7-32, provides that judgment that the attachment be quashed shall be entered when the court is of opinion that the facts stated in the affidavit or the amended affidavit were not sufficient to authorize is issuance, or that the affidavit is otherwise insufficient. But that section does not here apply. It applies to the affidavit and the amended affidavit for attachment provided for in Sections 1 and 6, Article 7, Chapter 38 of the Code, which are required to state the nature of the plaintiff's claim, the amount at the least which the affiant believes the plaintiff is justly entitled to recover in the action, proceeding or suit, and also that the affiant believes that some one or more of the grounds mentioned in Section 2 of the statute exist for an attachment.

The affidavit mentioned in these sections, and referred to in Section 32, Article 7, Chapter 38, is essential and forms the jurisdictional basis of the attachment proceeding which is ancillary or collateral to the main suit or action in which the attachment, by the terms of the statute, may issue. *Mabie* v. *Moore*, 75 W. Va. 761, 84

S. E. 788; *Roberts* v. *Burns*, 48 W. Va. 92, 96, 35 S. E. 922. In that respect the ordinary attachment proceeding provided for in Section 1, Article 7, Chapter 38 of the Code, differs from the proceeding here under review which is based upon Section 17, Article 6, Chapter 37 of the Code, and is a special, or an independent and original, proceeding for the collection of rent for which a tenant is liable to a landlord. The attachment for rent is not ancillary or collateral to any other suit or action, but is, by the terms of the statute, as to the rent claimed, to be proceeded in, tried and determined as if it were an original action brought in the Circuit Court, and the affidavit and the attachment shall take the place of a declaration in the case. This remedy by attachment, created and made available to a landlord by the statute, Code, 37-6-17, is in addition to and is consonant with the right to distrain for rent which is provided for a landlord by Sections 12 and 13, Article 6, Chapter 37 of the Code. The affidavit mentioned in the statute which provides the remedy for attachment for rent is the complaint under oath by the plaintiff which is referred to earlier in the same section of the statute. Code, 37-6-17.

From an examination and a comparison of the above cited statutes, it is clear that the affidavit required by Sections 1 and 6, Article 7, Chapter 38, as well as the complaint or affidavit required by Section 17, Article 6, Chapter 37, which in each instance forms the basis of proceedings by attachment, whether ancillary or original in character, differs materially from the affidavit required by Section 8, Article 7, Chapter 38, which is merely preliminary or antecedent to the execution of the attachment bond required by that section. It follows that though a motion to quash the attachment under Code, 38-7-32, is available to a defendant, that mode of defense may not be used to take advantage of the omission of the affidavit mentioned in Section 8, Article 7, Chapter 38, which is not the basis of the proceeding by attachment but is merely incidental or preliminary to the execution of the attachment bond required by Section 17,

Article 6, Chapter 37. The defendant had the right, under the statute, Code, 38-7-11, to except to the form and the sufficiency of the penalty and the security of the attachment bond because of the defect resulting from the failure of the plaintiff to file an affidavit stating the estimated value of the property to be attached, in the manner provided by the terms of that statute, but it was not entitled to make such defense by motion to quash. *Shenandoah Valley National Bank* v. *Hiett*, 121 W. Va. 454, 6 S. E. 2d 769; *Stevens* v. *Brown,* 20 W. Va. 450.

The second ground relied on by the defendant for reversal is without merit. The claim of the plaintiff is for rent to accrue within one year from September 1, 1944, which is the date to which the rent previously accruing under the lease had been paid by the defendant. The period for which this claim is made is within the express terms of the applicable sections of the statute. Code, 37-6-12, 37-6-13, and 37-6-17. Section 12 provides that rent may be distrained for within one year after the time it becomes due, and not afterwards, whether the lease be ended or not. Section 13 provides that goods liable to distress, shall be so liable for not more than one year's rent, whether it shall have accrued before or after the creation of the lien. *Anderson* v. *Henry,* 45 W. Va. 319, 31 S. E. 998. Section 17 gives a landlord the right to file his complaint for an order of attachment for rent which is reserved and will be payable within one year. The amount of the rent claimed by the plaintiff was the rent which was to accrue and was payable under the lease for the period of one year from September 1, 1944, the date when the first future monthly instalment of rent became payable, and from which the rent for one year was to accrue under the lease. This claim was within the terms of the statute authorizing the attachment and was not for the period of thirteen months or any other period in excess of one year before or after the creation of the lien of the attachment. No lien existed for the rent which accrued or was payable during the month of August, 1944, as that rent had been paid in

full to September 1, 1944, before the attachment was issued, and the lien of the attachment applied only to the rent which accrued and became payable within one year from and after September 1, 1944.

Instruction Number One, requested by the defendant and refused by the court, in substance, would have told the jury that if the jury believed that the plaintiff, by his refusal to provide or permit the plaintiff (meaning defendant) to have access to the furnace in order to provide sufficient heat for the hospital, or if the plaintiff failed to make necessary repairs to the plumbing in the hospital, and, as a result, the defendant was unable to make beneficial use of the leased premises, then the defendant was entitled to surrender the lease and the plaintiff could not recover.

This instruction was properly refused. It erroneously designated the plaintiff instead of the defendant, in undertaking to deal with the alleged refusal of the plaintiff to permit the defendant to have access to the furnace and was, for that reason, incorrect in form. But overlooking that defect and treating it as if it contained the intended reference to the defendant, that portion of the instruction assumes as true the disputed issue of fact whether the plaintiff did or did not refuse to provide or permit the defendant to have access to the furnace. The plaintiff denied that he so refused the defendant and introduced evidence in support of his denial. The evidence offered by the defendant tends to show that the plaintiff did refuse to provide or to permit the defendant to have such access. The evidence on this issue was conflicting. An instruction which assumes as true facts concerning which the evidence is in conflict should not be given. *Franklin* v. *Pence,* 128 W. Va. 353, 36 S. E. 2d 505; *Nicholas* v. *Kershner,* 20 W. Va. 251.

The defendant asserts that, under the evidence introduced upon the trial of the case, it had made a valid surrender of the lease after paying the rent due for the month of August, and, as a consequence, the plaintiff

was not entitled, as a matter of law, to recover any rent after the end of that month. In support of that contention it cites the case of *Koen* v. *Fairmont Brewing Company*, 69 W. Va. 94, 70 S. E. 1098. In that case the defense to the claim of the plaintiff for rent was based upon the impossibility of the use by the lessee of the leased premises which occurred during the term from a cause beyond its control. The premises were leased to the defendant for use solely as a saloon. Thereafter, but during the continuance of the lease, the operation of a saloon was rendered unlawful by an election under the provisions of a local option law. This Court held that such defense, if available at all, renders the contract of lease voidable only, and that to obtain the benefit of such defense the lessee must abandon the premises and wholly decline the benefit of the contract from the time the use of the premises became unlawful. The factual conditions there were entirely different from the situation which appears in this case. Here no illegality in the continued use of the premises for hospital purposes has occurred. Upon the controverted issues of fact whether the defendant abandoned the leased premises and delivered full possession to the plaintiff, and whether the plaintiff breached the provisions of the lease so as to entitle the defendant to vacate the premises and terminate the tenancy, which, by evidence, the defendant asserted and the plaintiff denied, the jury, by its verdict, found against the contentions of the defendant. That verdict, based on conflicting testimony and confirmed by the trial court, will not be disturbed by this Court. *Stephens* v. *Bartlett*, 118 W. Va. 421, 191 S. E. 550.

As no reversible error appears in the case, the judgment of the Circuit Court of Logan County is affirmed.

*Affirmed.*