Frank **WESTERN, Jr., and Johnie T. Sinnett, et al., Appellants,**

v.

**James D. HODGSON, Secretary Department of Labor, et al., Appellees.**

No. 73-1906.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1973.

Decided March 20, 1974.

John Troelstrup, Charleston, W. Va. (Daniel F. Hedges, E. Dandridge McDonald, Charleston, W. Va., on brief) for appellants.

Robert S. Greenspan, Atty., U. S. Dept. of Justice, and Robert K. Emerson, Huntington, W. Va. (Irving Jaffe, Acting Asst. Atty. Gen., William Kanter, Atty., U. S. Dept. of Justice, John A. Field, III, U. S. Atty., Charles F. Bagley, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, W. Va., Valentine & Partain, Logan, W. Va., on brief) for appellees.

Before Boreman, Senior Circuit Judge, and Russell and Widener, Circuit Judges.

WIDENER, Circuit Judge.

This is a civil suit brought under the Consumer Credit Protection Act, 15 U. S.C. § 1671 et seq., which prohibits garnishment in excess of 25% of an employee's weekly disposable earnings. The plaintiffs, Frank Western, Jr., and Johnie T. Sinnett, are coal miners employed by the Buffalo Mining Company (Buffalo) in Logan County, West Virginia, a defendant in this suit. Both purchased merchandise from the defendant, Lorado Super Market, Inc., (Lorado) on credit and, at the same time, executed agreements characterized by the plaintiffs as "purported wage assignments." These documents authorized Buffalo to deduct amounts owed by

plaintiffs to Lorado from their paychecks and to pay such amounts directly to Lorado. The executed agreements were then presented by Lorado to Buffalo and thereafter, pursuant to the terms of the documents and the amounts which Lorado informed it were owing by the various plaintiffs, Buffalo deducted the amounts owed from plaintiffs' wages and paid these amounts directly to Lorado. As a result of these deductions, the plaintiffs received no take-home wages for some pay periods and less than 75% of their wages for other pay periods.

Alleging jurisdiction under 28 U.S.C. § 1337, plaintiffs brought this suit under provisions of the Consumer Credit Protection Act[1] seeking injunctive relief[2] and damages against the Buffalo Mining Company and Lorado Super Market on account of alleged wage assignments. The district court dismissed the complaint, ruling that there was no right to bring a private action, either explicit or implied, to enforce the garnishment provisions of the statute.

We refrain from either reaching the question or expressing any view as to whether a private action may be maintained under the wage garnishment provisions of the Consumer Credit Protection Act. We affirm the district court's dismissal, however, since, in our view, no relief is available under the statute in any event under the facts presented in this case. Brown v. Allen, 344 U.S. 443, 459, 73 S.Ct. 397, 97 L.Ed. 469 (1959).

1. The Consumer Credit Protection Act provides, in relevant part, as follows:

Subchapter II.—Restrictions on Garnishment

§ 1671. *Congressional findings and declaration of purpose*

(a) The Congress finds:

(1) The unrestricted garnishment of compensation due for personal services encourages the making of predatory extensions of credit. Such extensions of credit divert money into excessive credit payments and thereby hinder the production and flow of goods in interstate commerce.

(2) The application of garnishment as a creditor's remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and consumption constitutes a substantial burden on interstate commerce.

\* \* \* \* \*

§ 1672. *Definitions*

For the purposes of this subchapter:

\* \* \* \* \*

(c) The term "garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.

§ 1673. *Restriction on garnishment—Maximum allowable garnishment*

(a) Except as provided in subsection (b) of this section and in 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 per centum of his disposable earnings for that week, or

(2) The amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by Section 206(a)(1) of Title 29 in effect at the time the earnings are payable,

whichever is less. . . .

\* \* \* \* \*

*Execution or enforcement of garnishment order or process prohibited*

(c) No court of the United States or any State may make, execute, or enforce any order or process in violation of this section.

§ 1674. *Restriction on discharge from employment by reason of garnishment*

(a) No employer may discharge any employee by reason of the fact that his earnings [may] have been subjected to garnishment for any one indebtedness.

(b) Whoever willfully violates subsection (a) of this section shall be fined not more than $1,000, or imprisoned not more than one year, or both.

§ 1676. *Enforcement by Secretary of Labor*

The Secretary of Labor, acting through the Wage and Hour Division of the Department of Labor, shall enforce the provisions of this subchapter.

2. Plaintiffs' employer, Buffalo Mining Company, which terms these documents as "voluntary revocable agreements," has treated the bringing of this suit as a revocation. Since the filing of this suit, no further deductions and payments have been made from the wages of the plaintiffs.

It should be noted that Lorado Super Market is not a company store owned or operated by Buffalo Mining Company.

Originally, the plaintiffs also sought to compel the Secretary of Labor to enforce the provisions of the Consumer Credit Protection Act by insuring that Buffalo henceforth paid at least 75% of plaintiff's earned wages in each pay period. But because the Secretary had not yet reached a final decision as to whether wage assignments were garnishments,[3] the district court dismissed this claim as lacking in ripeness. See, e. g., Abbott Laboratories v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). On appeal, the plaintiffs have abandoned this effort, but seek instead an order compelling the Secretary to render an interpretation as to whether or not the taking of plaintiffs' wages falls within the coverage of the Act. Our disposition of the central issue precludes further relief against the Secretary on this particular question.

On December 14, 1968 and again on June 24, 1970, Western signed documents which read as follows:

"BUFFALO MINING COMPANY
LORADO, WEST VIRGINIA

This is your authorization to deduct from my wages each pay day the amount turned in against me by the LORADO SUPER MARKET, INC. and/or the LORADO SERVICE STATION."

A similar document was signed by Sinnett on June 9, 1969. Thereafter, and continuing up to the filing of this suit, Buffalo withheld the take-home wages of each of the plaintiffs to the extent of the amounts turned in by the Lorado Super Market. It appears clear that the parties treated the agreement as a wage assignment,[4] although under the law of West Virginia there is some question as to whether it is valid as such.[5]

3. The plaintiffs, on October 14, 1971, requested the Department of Labor to enjoin defendants from continued violations of the Act. But in a letter dated October 18, 1971, the Secretary stated that their case was not within the Department's interpretation of the Consumer Credit Protection Act since an assignment of wages was not considered a garnishment. See also CCH Labor Law Reporter ¶¶ 30,641; 30,662; 30,684 (1970). Later, in an affidavit dated April 24, 1972 filed with the district court, the Secretary announced that the Department was currently reviewing its position concerning the definition of garnishment as requiring a court proceeding. The Department of Labor further stated that it was studying the extent to which certain non-court procedures under particular state statutes, although not labeled as a "garnishment," could come within the meaning of the term "garnishment" as defined in the Act. The matter was still under review as of May 14, 1973, the date of the district court's decision. Moreover, we were informed during oral argument that, although more than two years have passed since the Secretary was first requested to rule whether wage assignments came within the meaning of "garnishment" as used in the statute, the matter yet remains the subject of ongoing review within the Department. The inaction by the Department is inexplicable.

4. A wage assignment is a transfer of the right to receive wages effected by means of

a contract. It is, as here, a private transaction made without order of a court.

5. Since the agreement was negotiated between plaintiffs and the Lorado Super Market, which is not affiliated with the Buffalo Mining Company, it would appear to fall within the zone of regulated wage assignments. In pertinent part, W.Va.Code Ann. § 21-5-3 (Repl.Vol.1973) provides:

"No assignment of or order for future wages shall be valid for a period exceeding one year from the date of such assignment or order. Such assignment or order shall be acknowledged by the party making the same before a notary public or other officer authorized to take acknowledgments, and such order or assignment shall specify thereon the total amount due and collectible by virtue of the same and three-fourths of the periodical earnings or wages of the assignor shall at all times be exempt from such assignment or order and no assignment or order shall be valid which does not so state upon its face: Provided further, that no such order or assignment shall be valid unless the written acceptance of the employer of the assignor to the making thereof, is endorsed thereon: Provided further, that nothing herein contained shall be construed as affecting the right of the employer and the employees to agree between themselves as to deductions to be made from the payroll of employees; . . . . "

In order to come within the provisions of the Consumer Credit Protection Act, plaintiffs must demonstrate that these agreements constitute "garnishments" within the purview of the statute. The term "garnishment" is there defined as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." [6] After prohibiting garnishments in excess of 25% of an employee's weekly disposable earnings, or thirty times the minimum wage, whichever is less,[7] Congress further provided that "(n)o court of the United States or any State may make, execute, or enforce any order or process in violation of this section." [8] Thus, it appears clear that by the term "garnishment" Congress contemplated some type of judicial transaction. Nothing in the legislative history of the statute is to the contrary.[9] The purported wage assignments in the instant case, however, were brought about by neither legal nor equitable procedure. They were negotiated between the parties and subsequently implemented according to their tenor without judicial intervention. Under these circumstances, we are of opinion that these agreements are not "garnishments" within the meaning of the Consumer Credit Protection Act.[10]

The argument is made, however, that the legislative intent of those who drafted the Consumer Credit Protection Act was to comprehend within the statutory meaning of "garnishment" a less formalistic, claimed common law definition which would include wage assignments. Beyond stating that garnishment includes any legal or equitable procedure, though, the legislative history is silent. We note, moreover, that the remedies of both garnishment and attachment were unknown to common law;[11] both came into existence in this country by statutory enactment. See Ownbey v. Morgan, 256 U.S. 94, 108, 41 S.Ct. 433, 65 L.Ed. 837 (1921); Harris v. Balk, 198 U.S. 215, 222, 25 S.Ct. 625, 49 L.Ed. 1023 (1905); Freeport Motor Cas. Company v. Madden, 354 Ill. 486, 188 N.E. 415 (1933); Cole v. Randall Park Holding Company, 201 Md. 616, 95 A.2d 273 (1953); Queen v. Man Hospital, 128 W. Va. 574, 37 S.E.2d 443 (1946); Burk's Pleading and Practice, § 379 (1952).

Under most State statutes, the term "garnishment" denotes a proceeding whereby a plaintiff seeks to subject to his claim property of the defendant in

---

6. 15 U.S.C. § 1672(c).

7. 15 U.S.C. § 1673(a).

8. 15 U.S.C. § 1673(c).

9. See 1968 U.S.Code Cong. & Admin.News, pp. 1962–2030.

10. We are not unmindful of the fact that an abuse of contractual or agreed upon withholding of an employee's pay pursuant to the terms of a wage assignment could bring about the injustice Congress sought to rectify in the wage garnishment provisions of the Consumer Credit Protection Act. Nevertheless, as passed by Congress, the statute's terms embrace only garnishments which involve a "legal or equitable procedure."

The other side of the coin is that many of the various withholdings of wages are not only desired by the employee, but almost certainly would be considered beneficial to the employee in one context or another, whether or not specifically authorized by contract, statute, rule, or regulation. Examples are union dues; group hospitalization and life insurance premiums; savings bonds; deposits in credit unions; purchases of stock in the corporate employer under which plan the employer contributes a part of the purchase price; contributions to retirement plans.

11. Speaking for the Supreme Court in Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1905), Mr. Justice Pitney traced the origin of statutory foreign attachment to "the custom of London, under which a creditor might attach money or goods of the defendant either in plaintiff's own hands or in the custody of a third person, by proceedings in the mayor's court or in the sheriff's court." 256 U.S. at 104–105, 41 S.Ct. at 435. This procedure was both "local and limited," however, and thus would not appear to be part of the general common law of England. In any case, it seems clear that the remedy from its very inception was judicial and not, as urged here, a purely contractual matter between private parties.

the hands of a third person, or money owed by a third person to the defendant. West Virginia permits garnishment under W.Va.Code Ann. § 38–7–15, but, like most States, requires a paper to be filed with a court of appropriate jurisdiction stating specific grounds and the nature of the claim asserted against the defendant. See W.Va.Code Ann. §§ 38–7–1, 38–7–2. The garnishee is then required to file an answer disclosing in what sum he is indebted to the defendant and what effects of the defendant he has in his possession or under his control. W.Va.Code Ann. § 38–7–24. Thus, the garnishment procedure sanctioned by West Virginia, the State in which the acts complained of occurred, is typically judicial in nature and not a private contractual matter existing totally apart from court processes.

Consequently, we are unable to find any foundation within federal, West Virginia, or common law for plaintiffs' assertion that wage assignments, contractual in origin, are comprehended by the term "garnishments" within the provisions of the Consumer Credit Protection Act.

In this appeal, we are asked to imply a right of action under 15 U.S.C. § 1671 et seq. to enable private persons to enforce its provisions. Since, however, we have decided that wage assignments do not come within the purview of the statute and that no relief is available under any of the circumstances presented here, as before stated, we do not reach the question.

In so deciding, we repeat that we intimate no view as to whether or not a private right of action may be implied under the statute.[12] Moreover, since our decision only negates relief on these facts under the wage garnishment provisions of the Consumer Credit Protection Act, we similarly intimate no view as to whether or not plaintiffs may obtain relief under these same circumstances based upon the law of West Virginia. Should plaintiffs' wages be affected by a garnishment as defined in the statute, they may properly raise the questions presented at that time in an appropriate forum.

For the reasons expressed in this opinion, the dismissal of this case is

Affirmed.

12. Cf. Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1965). In *Allen*, the Supreme Court noted that "a federal statute passed to protect a class of citizens, although not specifically authorizing members of the protected class to institute suit, nevertheless implied a private right of action." 393 U.S. at 557, 89 S.Ct. at 827.